[No. 17117. Department One. October 21, 1922.]

LOUIS STERIOS, *also known as Louis Stereos, Respondent,* v. SOUTHERN SURETY COMPANY, *Appellant.*[1]

PLEADING (101)—AMENDMENT—DISCRETION. Under a complaint against an indemnity insurance company alleging a merger with the company issuing plaintiff's policy, it is not an abuse of discretion to allow an amendment alleging that defendant was engaged in the business of indemnity insurance and had assumed all obligations under policies theretofore issued, including plaintiff's policy.

SAME (103)—CONTINUANCE (6)—AMENDMENT—TERMS. In such a case, it is not error to allow the amendment without a continuance on account of the amendment, where the proof thereunder consisted of instruments of record in the office of the state insurance commissioner.

INSURANCE (124)—INDEMNITY INSURANCE—DAMAGES INCURRED OR PAID. In an action against an indemnity company, which assumed the defense of a suit for damages, resulting in a recovery against plaintiff for more than the amount of the indemnity policy, there can be no recovery for the insurance company's breach of promise to perfect an appeal, relied upon by plaintiff, in the absence of certain evidence that plaintiff sustained damages by reason of the insurance company's failure to appeal the case.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered September 26, 1921, upon the verdict of a jury rendered in favor of the plaintiff, in an action on a policy of indemnity insurance. Affirmed in part and reversed in part.

*Ballinger, Battle, Hulbert & Shorts,* for appellant.

*Henry W. Pennock* and *James R. Gates,* for respondent.

[1]Reported in 209 Pac. 1107.

MITCHELL, J.—On May 8, 1917, the Southern Surety Company, organized under the laws of Oklahoma and authorized to do business in the state of Washington, delivered to Louis Stereos an indemnity policy of insurance, agreeing to indemnify him against loss not exceeding $5,000 that might result to him by reason of bodily injuries sustained by any third person through the use of a certain automobile owned by him. The policy provided that the company would defend in the name of the insured any suit brought against him to enforce a claim for personal injuries. On September 25, 1917, while the policy was in force, Stereos' automobile, driven by him, collided with an automobile driven by one Wilson, at a street intersection in Seattle, and as a result of the collision a bystander, J. B. Ross, was injured. At one of the corners of the street intersection, Smith & Bloxom conducted a store, and, at the time of the accident, had the sidewalks piled with crates and boxes of merchandise, which Stereos claimed obstructed his view of the street on which the other automobile approached the intersection. Shortly after the accident, Ross commenced an action to recover damages against Stereos, Wilson, and Smith & Bloxom, charging them all with negligence causing his injuries. All of the defendants appeared separately in the action. Stereos was represented therein by attorneys who were paid by the insurance company, being the same attorneys who until that date had been employed by the company in similar cases. Upon the trial of that case the jury returned a verdict, on June 17, 1918, for Ross in the sum of $12,000 against each and all of the defendants. Judgment was entered upon the verdict against all of the defendants. Smith & Bloxom alone appealed and secured a reversal upon the ground that the trial court refused to give an im-

portant instruction that was duly requested by them. *Ross v. Smith & Bloxom,* 107 Wash. 493, 182 Pac. 582.

In May, 1920, upon a trial in garnishment proceedings, funds belonging to Stereos sufficient to satisfy the Ross judgment were discovered in a bank in Seattle, which, by direction of the trial court, were paid into court in full satisfaction of the Ross judgment and interest, in the sum of $13,538.40. Thereupon, by complaint filed December 1, 1920, this action was instituted by Stereos, not against the Southern Surety Company of Oklahoma that had issued the contract of insurance, but against the Southern Surety Company organized under the laws of Iowa, having its principal place of business at DesMoines, it being alleged in the complaint that the defendant was transacting business in this state under the authority of its laws, and that it had assumed all the obligations and liabilities of the Southern Surety Company of Oklahoma arising out of policies of insurance theretofore issued by the Southern Surety Company of Oklahoma, including the policy of insurance plead in the complaint. The complaint sets up two causes of action. The first one is on the policy, to recover $5,562, with interest from May 15, 1920. The second cause of action is to recover $7,976, being the difference between $13,538.40 and $5,562, together with interest, upon the theory or charge of negligence on the part of the surety company.

It is alleged that, after the *Ross* suit was commenced, the surety company had sole and complete charge of the defense of Stereos in all particulars, as provided in the policy, and that Stereos cooperated, as required by the terms of the policy; that, after the verdict, the surety company, through its then attorney, prepared and filed a motion for a new trial and for judgment notwithstanding the verdict, and prepared

briefs therein asserting that reversible error had been made, in that the verdict was against the law and the evidence; that, after the entry of the judgment in that case, the surety company, before the time for an appeal had expired, orally notified this plaintiff that it was going to appeal the case to the supreme court of the state, in accordance with the terms and conditions of the policy of insurance, and that there were reversible errors in the cause; that he relied on the promise and believed an appeal was being perfected by the company; but that, on the contrary, the company negligently and carelessly failed to take the appeal and negligently suffered and allowed the judgment to become final; that, had the company appealed the *Ross* case, in accordance with the terms and provisions of the policy, and in accordance with the promise of its then attorneys to the plaintiff, the judgment would have been reversed; and that, by reason of defendant's failure to appeal the case, he has been damaged in the sum of $8,476.40. To the second cause of action the defendant interposed a general demurrer, which was overruled by the trial court.

The answer of the defendant denied all of the essential allegations in both causes of action, except it admitted that, at the time of the commencement of the suit, it was engaged in the business of writing accident, casualty and indemnity insurance and was authorized to do business in the state of Washington, and is a corporation organized under the laws of the state of Iowa, with its principal place of business at Des Moines. And then for further answer to the complaint it alleged:

"That insofar as this defendant is concerned, the plaintiff failed to do and perform any of the conditions contained in said policy, and particularly the conditions contained therein required to be performed by

the said plaintiff in order to keep and maintain said insurance in good standing. And failed and neglected to give this defendant timely notice of any accident mentioned in plaintiff's complaint, and failed to give any notice of any claim made, or to give this defendant any notice of any suit brought to enforce such claim as required by the conditions and provisions contained in said policy.''

Upon the trial, at the close of the testimony on behalf of the plaintiff, the defendant challenged its sufficiency to support any verdict and moved for a nonsuit as to each cause of action. The challenge was repeated at the close of all the testimony and a motion to dismiss interposed as to each cause of action. All of the motions were denied; and the defendant's written requests to instruct the jury to return a verdict for the defendant, as to each cause of action, were refused. The jury returned a verdict for the plaintiff in the sum of $13,538.40. A motion by the defendant for a judgment, as to each cause of action, notwithstanding the verdict was denied. Its motion for a new trial was denied, and from a judgment on the verdict, this appeal has been prosecuted.

Concerning the first cause of action, appellant contends, in effect, that error was committed in receiving proof of the merger of one company into the other, under the complaint as it originally stood; that the court erred in allowing a trial amendment of the complaint, and especially without a continuance of the trial; and that there was a failure of proof. The original complaint did not specifically allege an assumption by the appellant of the liabilities and obligations of the Oklahoma corporation, but only a merger of the latter named company into the other one, and considerable discussion has been indulged in upon the questions of merger and consolidation, together with their

effects upon the rights of third parties, not important in disposing of this case as it now stands.

Our statutes require that the allegations of pleadings shall be plain and concise, that is, that each shall be open and fair with his adversary in framing the issues to be tried; and it is doubtful, under the rule of liberality in the construction of pleadings enjoined by statute, if the appellant is warranted in contending, in the face of the affirmative matter alleged in its answer hereinbefore set out, that it is not holden for the liabilities incurred by the contract of insurance delivered to the respondent by the Oklahoma company. However, a trial amendment overcame all technical or other objections in this regard. The amendment was that the appellant was engaged in the business of liability, casualty and indemnity insurance in this state, under the laws of this state, and that it assumed all the obligations and liabilities of the Oklahoma company arising out of policies theretofore issued by that company, including the policy delivered to the respondent. The appellant admitted it was authorized and engaged in such insurance business in this state, and the proof shows that it was authorized to transact such business, commencing on May 2, 1918, the same being a date intervening the dates of the commencement of the suit and of the verdict and judgment in the case of *Ross v. Smith & Bloxom, supra.*

As to allowing the trial amendment, a matter so largely in the discretion of the trial court, there was no error or abuse of discretion, nor was there any error or abuse of discretion in refusing a continuance of the trial, since the proof offered in support of the amendment consisted of instruments of public record in the office of the state insurance commissioner of this state, being in part a contract between the company that issued the policy to the respondent as one

party thereto and the appellant as the other party, whereby, in consideration of enumerated assets transferred and set over by the Oklahoma company to the appellant, the appellant agreed to assume and reinsure all bonds, policies, obligations and liabilities, except capital stock, of the Oklahoma company, which contract was duly filed with the insurance commissioner of this state on February 28, 1918, prior to appellant's being authorized by that department to do business in this state. The verdict and judgment as to the first cause of action were well sustained and proper, there being no prejudicial error in the trial of it.

The second cause of action was not on the contract of insurance; it was on an alleged breach of a promise of the insurance company to appeal from the judgment in the *Ross* case. There was a square conflict in the evidence whether the promise was made, but the verdict has determined that it was made. The promise alleged was that the surety company would prosecute an appeal from the judgment in the *Ross* case and that there was reversible error in it. That there was reversible error in it was, of course, but an opinion of the attorney who at that trial represented the insurance company. No appeal was taken on behalf of Stereos. There was no evidence whatever in the present case of damages, except constructively, or rather by implication. The judgment in the *Ross* case and the fact that it was paid by Stereos are alone relied upon in that respect.

The argument on behalf of the respondent is that, as a matter of law, by reason of the failure of the company to appeal from the Ross judgment, which judgment was thereafter paid by Stereos, he has sustained damages to the extent alleged in his second cause of action, and that appellant is estopped or precluded from asserting or claiming to the contrary.

Respondent relies largely on the case of *Globe Naviga-tion Co. v. Maryland Casualty Co.,* 39 Wash. 299, 81 Pac. 826, and kindred cases, one of which wherein the facts were similar to those in the present case cited the *Globe Navigation Company* case, *supra,* and er-roneously, we think, applied the doctrine of that case.

The *Globe Navigation Company* case, *supra,* was one wherein an indemnity insurance company defended, as required by its policy, at its own expense, an action for damages for the alleged negligence of the naviga-tion company, brought by an employee against the navigation company, in which was joined a second cause of action upon an alleged breach of an implied maritime contract for surgical and medical attendance to the injured. The injured person recovered judg-ment. Upon being notified of the result, the insurance company directed the navigation company to appeal the case. It proceeded as directed, and while the right of appeal was yet alive and fully protected, the insur-ance company instructed the navigation company to abandon the appeal, agreeing to pay the judgment. The navigation company again followed instructions and abandoned the appeal. Thereafter, when the right of appeal was foreclosed, the insurance company re-fused to pay the judgment. The navigation company was compelled to, and did, pay it, and thereafter brought suit against the insurance company. The an-swer of the insurance company was that the judgment in favor of the injured seaman against the navigation company was not on the first cause of action, the neg-ligence of the navigation company in the operation of its vessel, but upon the second cause of action, the breach of the implied maritime contract to furnish suitable medical attention, which latter was not cov-ered by the policy of insurance. It further answered

that, at the time it directed an appeal, as well, also, the abandonment of it and promised to pay the judgment, it was unaware of the real grounds upon which the judgment rested; and that the judgment was not for the negligence of the navigation company in the operation of its vessel, but for the breach of its implied contract to furnish medical attention. It further answered that its promise to pay the judgment was because of its lack of information concerning the true situation, and that it was the duty of the navigation company to advise the insurance company of the real grounds of the judgment. But it was held that the knowledge of the attorneys employed by the insurance company to defend the navigation company was the knowledge of the insurance company, that it was bound by that knowledge, and that the navigation company was free from any concealment or other attempt to deceive. Upon declaring that the right of appeal is a valuable one, this court concluded:

"The respondent (Globe Navigation Company) therefore had the absolute right to have the cause reviewed on appeal. It was induced to abandon that right by the conduct of appellant, and the latter should not now be heard to say that respondent was not prejudiced because of mere absence of a positive demonstration that it would have secured a reversal on appeal. No one except the Infinite Mind can determine that question to a certainty at this time. Not even the court that would have reviewed the case can now know whether in its view reversible error would have appeared or not. But the certain fact does appear that, by reason of appellant's conduct, respondent did not have the benefit of the wisdom and experience of the learned judges of the appellate tribunal, the United States circuit court of appeals. We therefore think appellant *is now estopped to deny its liability to pay as it promised,* which included both

the amount of the judgment and the subsequently incurred costs.''

Clearly the rule or doctrine of that case is that an abandonment of the valuable right of appeal by a judgment debtor primarily liable, at the request and direction of one liable over, coupled with the promise of the latter to pay the judgment, is a sufficient consideration for the promise to pay as an enforcible contract.

In the present case, had the surety company promised the respondent it would appeal from the judgment in the *Ross* case, *supra,* or pay that judgment, the case would fall within the rule of the *Globe Navigation Company* case, *supra.* That kind of a promise would be tangible and free from conjecture and remoteness with reference to its penalty. But no such promise is alleged or attempted to be proven. In the *Globe Navigation Company* case, *supra,* when the promisee complied with the terms of the offer or directions of the promisor and actually abandoned its valuable right of appeal, it was then entitled to have and recover of the promisor the amount specifically agreed to be paid, namely, the amount of the judgment. Not so in the present case, however, where the promise was simply to prosecute an appeal. Had this promise been complied with rather than broken, and had a reversal of the judgment ensued, it would, after all, have opened the way to a possible verdict and judgment, under the allegations of the complaint in the *Ross* case, *supra,* largely in excess of the verdict and judgment set aside. In the present kind of case estoppel is not involved. The questions are of damages, proof of damages, and upon whom the burden of proof lies.

The Iowa case of *Getchell & Martin Lumber Mfg. Co. v. Employers' Liability Assur. Corp.,* 117 Iowa 180, 90

N. W. 616, was a case very similar to the present one. An employer was insured against loss for personal injuries to its employees. An employee, Newbury, who had been injured, sued the employer and, under the policy, the insurance company undertook the defense. The employee obtained judgment for an amount in excess of the amount provided in the indemnity policy, and the insurance company agreed to appeal, but failed to do so in proper time. The employer then sued the insurance company upon its liability for breach of its promise to appeal and recovered judgment in the trial court, where it was held that the burden was upon the insurance company to show that its failure to take the promised appeal had not damaged the employer. On appeal the supreme court of that state said:

"Here there was a judgment of the district court against plaintiff. Generally speaking, it was presumptively valid, and would stand on appeal. 1 Greenleaf, Evidence, section 19; *Smith v. Yager*, 85 Iowa, 706; *Wright v. Association*, 96 Iowa, 360. What warrant is there for saying that in a case of this kind there is a counter presumption that it would have been reversed? And, without such presumption, plaintiff has made no showing of damage. Even overcoming the presumption first mentioned would not be enough to make plaintiff's case. We must further presume that Newbury could not have succeeded on another trial. In our opinion, the burden is upon the plaintiff in an action of this nature to show the amount of his damages. Sometimes he is aided in this by a presumption, but not so under the facts in the case at bar. As sustaining this conclusion, see, in addition to the cases cited, as criticizing the rule in the *Godefroy* case: *Bruce v. Baxter*, 7 Lea, 477; *Cox v. Sullivan*, 7 Ga. 144, (50 Am. Dec. 386); *Suydam v. Vance*, 2 McLean, 99 (Fed. Cas. No. 13,657)."

The Iowa case, *supra*, was cited with approval in the North Carolina case of *Wynnewood Lumber Co. v. Traveler's Ins. Co.*, 173 N. C. 269, 91 S. E. 946.

The New York case of *McAleenan v. Massachusetts Bonding & Ins. Co.*, 232 N. Y. 199, 133 N. E. 444, was also similar to the case at bar. It was a case in which an action against the plaintiff for an injury by his automobile was defended by the surety company, and, after judgment against him, the surety company notified him that it would take an appeal and that he need take no steps in the matter, and its counsel stated that the judgment was affected with error, and plaintiff, relying on the promise to appeal, did nothing thereafter, and later sued the insurance company for its failure to take the appeal as agreed. In that case, as in the case at bar, the question of estoppel was argued. There was judgment for the plaintiff in the trial court, which was affirmed upon appeal to an appellate division of the supreme court. However, on an appeal from the decision of the last named court to the court of appeals of New York, by the surety company, the judgment was reversed. In the court of appeals, the contention of the insurance company was that the burden rested upon the plaintiff to show that the judgment against him would have been reversed if the appeal had been taken as agreed to, and that, not having shown this, there was no evidence that the failure to take the appeal resulted in any damages. That view was adopted by the court. In discussing the situation it was said:

"It is urged and was by the Appellate Division held that defendant is estopped from making this contention and from calling into question the success of the appeal which should have been taken. This idea of estoppel seems to be based upon the promise made by the defendant that it would cause the appeal to be taken plus the assertion of its counsel in substance that the judgment secured against plaintiff was affected by error and would be reversed. We fail to see how defendant by these, or any other facts in the case, was

estopped from making the claim that plaintiff was under the burden of showing that the appeal if taken would have been successful and that damages had been suffered. It is not necessary to invoke any principle of estoppel in order to uphold the obligation of the defendant to take the appeal. It was an agreement for which a good consideration was found in the terms of the policy and the relations between the parties, and it became a binding obligation which could not be violated or neglected without responsibility. . . . The agreement only extended to the consummation of the appeal and its proper prosecution. It did not guarantee success. It ought to be a matter of common knowledge that an agreement to prosecute an appeal is not equivalent to a warranty that the appeal will succeed.

"It is possible, although that does not clearly appear, that the idea of prohibition by estoppel of the right to question the value of the appeal is based upon the assertions of counsel already referred to that the same would be successful. Of course such an assertion was the mere expression of an opinion and an opinion does not become the basis of an estoppel. Even if we should make the unwarranted assumption that this was equivalent to the assertion of a present fact, it would not work an estoppel because plaintiff certainly was not induced by it to refrain from protecting his rights. The exuberant confidence of counsel would have had the effect to stimulate to an appeal rather than otherwise and plaintiff's absention from taking such an appeal was not due to this statement but to the agreement of the defendant that it would take the appeal for him. Thus in our judgment the entire relationship between the parties in respect of this matter is reduced to an ordinary agreement by one party for a good consideration to do something which he ultimately fails to do and for which failure he must respond in damages which proximately result therefrom. Those damages were, in our opinion, just as much a subject of inquiry and contest as would be those in an ordinary action for personal injuries caused by the negligent act of the defendant and where the latter as a matter of course even though admitting his negligence would be per-

mitted to dispute the extent of the injuries and the amount of the damages resulting therefrom."

This, as stated in the *McAleenan* case, *supra,* is a fundamental rule. That is, that one seeking to hold another liable for neglect to perform some duty or obligation must show that the neglect has resulted in some loss or injury, and that as the result thereof certain damages have been suffered.

The judgment as to the first cause of action is affirmed. As to the second cause of action the judgment is reversed, with directions to enter judgment for the appellant notwithstanding the verdict.

PARKER, C. J., TOLMAN, FULLERTON, and BRIDGES, JJ., concur.