173 So.2d 585

HARTFORD ACCIDENT & INDEMNITY COMPANY

v.

C. Pierson COSBY.

2 Div. 456.

Supreme Court of Alabama.

March 11, 1965.

Rehearing Denied April 15, 1965.

Harry W. Gamble, J. E. Wilkinson, Jr., and Harry W. Gamble, Jr., Selma, for appellant.

W. McLean Pitts, Edgar A. Stewart and Philip Henry Pitts, Selma, for appellee.

HARWOOD, Justice.

This is an appeal from a judgment for the plaintiff rendered in what is commonly called an "excess judgment suit." The plaintiff below, who is the appellee here, was insured by the appellant, Hartford Accident and Indemnity Company, for liability resulting from accidents. The amount of the policy was $25,000. The policy provided that the insurer would defend any suit against the insured seeking damages caused by accident, but that "the company may make such investigation, and settlement of any claim or suit as it deems expedient."

The complaint in the present suit contains five counts. Each count sets forth in substance the policy contract and avers that on 15 July 1957, a suit was brought in the Circuit Court of Wilcox County, Alabama, by Carrie S. Smith et al., as plaintiffs against the Alabama Power Company, a Corporation, John J. Smedley, and C. Pierson Cosby (the latter being the insured under the policy and also the plaintiff in the present action). The Carrie Smith suit claimed damages in the sum of $100,000 for the death of one Earl Smith; that the present appellant, as insurer of the defendant Cosby, assumed control of the defense of said suit, the investigation thereof, and the negotiations for a settlement; that said Carrie Smith suit in Wilcox County resulted in a judgment against all of the defendants in the amount of $75,000, and costs of court; that the defendant Cosby filed a motion for a new trial which was overruled, and thereafter he perfected his appeal to the Supreme Court of Alabama. That court affirmed the judgment on 22 March 1962, and denied the application for rehearing on 21 June 1962. See Alabama Power Company v. Smith et al., 273 Ala. 509, 142 So.2d 228.

Count 1 avers that the appellant "knowing that credible sworn testimony would be offered on the trial of said case against the plaintiff et al., failed to perform the duty it owed this plaintiff and the exercise of good faith in the negotiations of said settlement of said claims and suit, but on the contrary, wrongfully and in bad faith, and acting for its own interest wrongfully failed, declined, or refused to settle said claim * * * although the said defendants had the opportunity of settling said claim within the limits of said policy of insurance."

Count 2 of the complaint is virtually the same as Count 1, except it alleges that the appellant negligently failed or refused to settle the claim, etc.

The complaint further alleges that this appellee, in order to prevent an execution being issued against his personal property, was forced to execute a supersedeas bond and that this appellant refused to execute the supersedeas bond for the appellee until he deposited with the appellant U. S. Treasury notes in the sum of $50,000. It was also averred that he was caused to employ attorneys and incur fees therefor.

In February 1960, demurrers were filed to the complaint and on 2 November 1962, the demurrers were overruled.

The appellant filed four pleas, the first two pleas being the general issue and pleas three and four being the statute of limitations of one year. Thereafter on 1 April 1963, the appellee amended his complaint by adding Counts 1A (alleging bad faith), 2A (negligence), and 3A (negligence). These counts contained substantially the same averments as the original count but with additional allegations setting forth more details than were averred in Counts 1 and 2.

There were other pleadings, but we do not consider it essential to this review, other than to note that the court sustained the appellee's demurrers to pleas 3A and 4, which were pleas of statute of limitations.

Upon the trial of the present cause the jury returned a verdict in favor of the plaintiff-appellee in the sum of $20,863.78, and the court entered a judgment thereon. The defendant's motion for a new trial being overruled, an appeal was perfected to this court.

The admitted or uncontradicted facts show that the appellant, as the insurer, assumed control of the defense of the appellee in the Carrie Smith case; that prior to the trial of the Smith case, and during said trial, the plaintiffs in the Carrie Smith case offered to settle their claim for $25,000; the appellant refused to pay this amount, but offered to pay $12,500 if the Alabama Power Company, one of the co-defendants, would pay the other $12,500. The Power Company declined to contribute more than $500.00 towards the settlement; the appellee's personal attorney, McLean Pitts, demanded before and during the trial of the Carrie Smith case that the appellant accept the $25,000 offer of settlement.

There was also evidence introduced which tended to show that the appellant notified the appellee that the Carrie Smith case claimed damages of $100,000 and was in excess of the policy limits; that the appellant was advised by its attorney by letter that the Carrie Smith case was a serious case, and that the appellant's (Hartford's) attorney was employed to represent the appellee in the Carrie Smith case and thereafter assumed charge and control of the defense of the Smith case; that after being notified by the appellant that the Smith case claimed damages in excess of the policy limits, the appellee employed McLean Pitts as his personal attorney to represent him in the Carrie Smith case; that Mr. Pitts, the appellee's attorney, before the trial of the Carrie Smith case, demanded that the appellant settle the case for $25,000, and advised the appellant that if the case was not settled for said amount the appellant would be guilty of bad faith and negligence; that the appellant appealed the Carrie Smith case but refused to execute a supersedeas bond to protect its assured, the appellee, unless the appellee deposited with the appellant sufficient collateral. The appellee did deposit with the appellant $50,000 in U. S. Treasury four percent notes and the appellee then executed a supersedeas bond; that $12,500 was retained by the appellant out of the U. S. Treasury notes which retained sum was used by the appellant in part payment of the judgment in the Carrie Smith case.

Under assignment of error No. 1, appellant has argued that the lower court erred in overruling appellant's demurrer to Counts 1 and 2 of the complaint.

■ Pretermitting the validity of the sufficiency of the assignment because of its generality, we see no need to inquire into the sufficiency of Counts 1 and 2 in that it is clear that under Counts 1A, 2A, and 3A, the same issues are presented, and the evidence offered was admissible under either Counts 1 and 2, or under the remaining three counts. There was no affirmative charge requested as to Counts 1 and 2. The verdict rendered by the jury was a general verdict, and referable as well to Counts 1A, 2A, and 3A, as to Counts 1 and 2. Therefore, if it should be conceded arguendo that Counts 1 and 2 were insufficient, the action of the court in overruling the demurrer to the complaint would be error without injury. Hamilton v. Brown-

ing, 257 Ala. 72, 57 So.2d 530; Brush v. Rountree, 249 Ala. 567, 32 So.2d 246; Central Aviation Company v. Perkinson, 269 Ala. 197, 112 So.2d 326. Assignment of error No. 1 is unavailing.

Assignments of error Nos. 2, 3, and 4, assert as error the court's action in sustaining the appellee's demurrers to pleas 3 and 4. These pleas seek to impose as a defense the statute of limitations of one year.

Assignment of error 13, relates to the refusal of the trial court to give the appellant's written charge, affirmative in nature, that the cause of action was barred by the statute of limitations.

The admitted and undisputed facts show that the $75,000 verdict and judgment in the Carrie Smith case was rendered and entered on 6 November 1958; that a motion for a new trial was timely filed and overruled and thereafter an appeal was perfected to this court wherein the judgment was affirmed on 22 March 1962, and the rehearing was denied on 21 June 1962.

The appeal was taken on 24 March 1959, and Hartford refused to made a supersedeas bond unless Cosby deposited with Hartford security in the amount of $50,000, which demand Cosby complied with on 18 April 1959. On 14 January 1961, some nine months after Cosby had deposited the security for the supersedeas bond, the present suit was filed.

In support of these assignments of error, it is the appellant's contention that the one year statute of limitations governing this action began to run on the day the judgment in the Carrie Smith case was entered, that is, 6 November 1958, and this suit not being filed until 14 January 1961, the bar of the statute of limitations had fallen.

Counsel for appellant argue that unless the date of the rendition of the judgment in the Carrie Smith case be considered the day on which the statute of limitations began to run, rather than the day of the affirmance of the judgment in this court, the result would be to permit the appeal to create an exception to the statute of limitations, and would therefore violate the doctrine that there are no exceptions to a statute of limitations except those made in and by the statute itself. Vines v. Crescent Transit Co., 274 Ala. 173, 146 So.2d 318.

We consider, however, that we are not dealing with an exception to a statute of limitations, but rather with when the appellee's cause of action ripened, that is, the day on which the statute of limitations began to run.

American Mutual Liability Ins. Co. of Boston, Mass. v. Cooper, 5 Cir., 61 F.2d 446, involves the same point which we are now considering. The case involved an appeal from a judgment of the U. S. District Court for the Northern District of Alabama which held that under the Alabama statute of limitations the cause of action did not accrue until the judgment in the original case of Cooper v. Auman, 219 Ala. 336, 122 So. 351, was affirmed by the Supreme Court of Alabama. The opinion of the Fifth Circuit Court of Appeals states:

"It is suggested that the case of the insured was barred by the statute of limitations of one year, which it is agreed is applicable to this case. The cause of action did not accrue until the judgment in favor of Mrs. Auman was affirmed by the Supreme Court of Alabama and was satisfied by appellee, both of which events occurred within less than one year prior to the bringing of suit. Jones' Ex'rs v. Lightfoot, 10 Ala. 17; Attleboro Mfg. Co. v. [Frankfort Marine Accident & Plate Glass] Insurance Co. [1 Cir., 240 F. 573], supra. The contribution by appellee to the cost of the supersedeas bond was made more than a year before the suit was brought, but it did not set in motion the statute of limitations. Appellee was bound by his policy to aid in

602

prosecuting the appeal, and could not have sued before the suit against him was finally determined."

In Likenhoger v. American Fidelity & Cas. Co., 152 Tex. 534, 260 S.W.2d 884, an action by an insured against his insurer for negligently rejecting a number of settlement offers within the policy limits, it was held that the pertinent statute of limitations began to run when the judgment against the insured became final. The court pointed out that the rights of the insured under such circumstances were not invaded until such time as his liability and the extent thereof had been determined by a final judgment in the injured person's action against the insured.

On appeal the judgment in the Carrie Smith case was subject to being affirmed, or reversed, or affirmed upon condition of a remittitur by the plaintiffs. It was only upon the contingency of an unconditional affirmance that it could be said that there had been an invasion of Cosby's rights which were necessarily injurious to him. Had the case been reversed or had a remittitur been ordered reducing the amount of the Carrie Smith judgment to within the policy limits, no cause of action would then have been possessed by this appellee.

As stated in West Pratt Coal Co. v. Dorman et al., 161 Ala. 389, 49 So. 849, 23 L.R.A.,N.S., 805:

"* * * But if the thing complained of is not necessarily injurious, or is not an invasion of the rights of another, of itself affording no cause of action, then whatever of legal injury may result from it furnishes a cause of action accruing when the injury occurs, and then the statute of limitations commences to run."

In line with the general view, we hold that the statute of limitations did not begin to run until the final affirmance of the judgment in the Carrie Smith case by this court.

Technically, the court below erred in sustaining the demurrer to plea 3, which was in code form. However, under the admitted and undisputed facts the pleas of the statute of limitations were without merit, and the court would have been in error had it refused to grant a motion to strike such pleas when timely filed, or had it refused an appropriate instruction affirmative in nature directed toward such pleas. Under such conditions the action of the court in the premises was error without injury.

Appellant's assignment of error No. 19 relates to the action of the court in overruling the appellant's objection to the following question:

"Q. Now Mr. Hobbs, I will ask you whether or not in your opinion at that time in the Circuit Court of Wilcox County, Alabama, when you were down there for the trial of this case, was it your opinion that that was the top jury value of that claim?" (Meaning $25,000 as top jury value.)

The record then shows the following:

"A. You mean do I think there was a reasonabe possibility that a jury verdict would exceed $25,000?

"Q. Yes, sir.

"A. Yes, sir, there was a reasonable probability in my opinion that a jury verdict would exceed $25,000."

Mr. Hobbs had previously testified to the effect that as counsel for the plaintiffs he had offered to settle the Carrie Smith case for $25,000 as he thought that was the most the insurance company and Alabama Power Company would pay in settlement "* * * or I would have been asking for more."

Counsel for appellant argues that this opinion evidence by Mr. Hobbs was inadmissible in that it was invasive of the province of the jury. In support of this argument counsel relies heavily upon the ex-

pression of this court in Waters v. American Casualty Co. of Reading, Pa., 261 Ala. 252, 73 So.2d 524.

In that case which was also an excess judgment suit as is the present suit, Mr. Williams and Mr. Grooms, attorneys experienced in damage suit practice, were permitted to answer hypothetical questions based upon evidential facts to the effect that assuming such situation would they have paid $5,000 to settle the suit brought against an insured ($5,000 being the limit of the insurance policy). Each of the witnesses testified that they would have taken the same position as that taken by the attorney representing the insurance company, who had declined the offer of settlement of $5,000. This court held that it was error to permit this testimony in that the questions called for answers which invaded the province of the jury, and concerned the very issues in the case.

It is readily apparent that the testimony of Mr. Williams and Mr. Grooms did relate to the very issues of the case. Mr. Hobbs' testimony is not, however, in this category.

■ The pertinent issue in the present case is whether the appellant was negligent, or was guilty of bad faith, in refusing to settle the Carrie Smith case within the limits of the policy issued to Cosby. The burden was upon the plaintiff to introduce evidence tending to establish one or the other of these issues. We can think of no other way that such issues could be established other than by evidence tending to show that a reasonable probability existed that a jury verdict would exceed the $25,-000 limits of the policy in question. As stated in the Waters' case, supra:

"We think this type of case is one in which expert testimony can very well be accepted, but the questions and answers thereto should be proper."

Mr. Hobbs' testimony was not to the ultimate issues of the case, but was directed toward showing the reasonable probability that should the Carrie Smith case go to a jury there was in his opinion a reasonable probability of a verdict in excess of the limits of the policy. Such proof was incumbent upon the plaintiff, the appellee here. In this aspect there was no error in the rulings of the court in the above instance.

■ The appellant further argues under this assignment that no proper predicate was laid for the introduction of the opinion evidence of Mr. Hobbs in that no facts were elicited upon which his opinion was based.

In Birmingham Amusement Co. v. Norris, 216 Ala. 138, 112 So. 633, 53 A.L.R. 840, this court wrote:

"If the witness is shown to have such knowledge, he may give his opinion thereon without detailing to the jury all that he has observed." (Citations omitted.) "The value of the opinion may of course be tested on cross-examination by eliciting the facts and appearances upon which it is based. As stated by Prof. Wigmore:

" 'There is no principle and no orthodox practice which requires a witness having personal observation to state in advance his observed data before he states his inferences from them; all that needs to appear in advance is that he had an opportunity to observe and did observe.' "

To the same effect see also Watson v. Hardaway-Covington Cotton Co., 223 Ala. 443, 137 So. 33; American Life Insurance Co. v. Shell, 265 Ala. 306, 90 So.2d 719, 59 A.L.R.2d 917; Rolls v. State, 35 Ala. App. 283, 46 So.2d 8.

Further, Mr. Hobbs testified as to the nature of the Carrie Smith suit; that he was a trial attorney with twelve years experience, and had represented both plaintiffs and defendants in damage suits; that he fully investigated the Carrie Smith case and was thoroughly familiar with all the facts of the case; he further testified concerning the Workmen's Compensation pay-

ments as a factor affecting his opinion as to the reasonable probability affecting a jury verdict; and he further testified as to his knowledge and familiarity with jury verdicts in Wilcox County in death cases prior to the Smith case.

While not all of the above details of fact testified to by Mr. Hobbs had been drawn out at the time of the above question, their subsequent elicitation, if sufficient as a whole, would cure any error in the admission of such testimony. Altogether we think that the predicate established by Mr. Hobbs' testimony furnished a sufficient predicate for expert opinion even under the contention made by counsel for the appellant.

■ Appellant's assignments 5, 6, 7, 8, and 9, relate to the refusal of its requested written charges, affirmative in nature, both general in nature, and also specifically and respectively as to Counts 1A, 2A, and 3A. Particularly does counsel argue that error resulted from the refusal of the affirmative charges as to the bad faith counts.

The contract of insurance gave to Hartford the exclusive power of settlement of claims within the policy coverage.

The undisputed evidence shows that Hartford investigated the Carrie Smith claim; that prior to the trial of the Smith case, and during the trial an offer by the plaintiffs to settle the Smith claim within the limits of the policy was made; Hartford had put this appellee Cosby on notice that the suit against him claimed damages in excess of the policy coverage; the attorney for Cosby, privately employed, on several occasions made demands on Hartford for the settlement of the Smith claim within the limits of the policy; that in a letter dated 25 September 1958, the attorney for Hartford had informed Hartford, among other things: "This is a serious case and we are preparing in every way possible for its trial which is scheduled * * *"; that the attorney for Hartford informed Mr. Pitts that Hartford would

pay one half, or $12,500 to settle the claim if the co-defendant, Alabama Power Company, would pay the other half, but the Alabama Power Company refused this offer, whereupon Mr. Pitts again demanded that the Smith claim be settled for $25,000.

The attorney for Hartford testified in detail as to the factors which he considered in recommending to Hartford that they pay $12,500 provided the Power Company would pay a like amount in order to settle the Smith claim.

In rebuttal Mr. Pitts testified as to the factors he considered in arriving at his conclusion that the verdict in the Smith case would probably be in excess of $25,000.

In Waters v. American Cas. Co. of Reading, Pa., 261 Ala. 252, 73 So.2d 524, supra, this court observed:

"The question is asked in some of the authorities, 'what would constitute negligence in the failure to settle a case as distinguished from bad faith?' 131 A.L.R. 1501. The answer is that it is a question for the jury from all the facts and circumstances to determine whether the failure on the part of the insurer to make settlement is an act of negligence or one of bad faith. Both of those terms have a well understood meaning, and we do not see any reason why we should stumble over their application."

Again, as to proof of the issue of bad faith, it is stated in American Mutual Liability Ins. Co. of Boston, Mass. v. Cooper, 5 Cir., 61 F.2d 446:

"In our opinion the insurer cannot escape liability by acting upon what it considers to be for its own interest alone, but it must also appear that it acted in good faith and dealt fairly with the insured. The insurer, as it had a right to do under the policy, assumed exclusive control of the claim against the insured, and took unto itself the power to determine for the insured all questions of liability, settlement, of

defense and management before and during trial, and of appeal after final judgment. We are of opinion that this relationship imposes upon the insurer the duty, not under the terms of the contract strictly speaking, but because of and flowing from it, to act honestly and in good faith toward the insured. It was open to the jury to find that the insurer did not perform this duty."

■ We are clear to the conclusion that under all the evidence the court below was justified in refusing appellant's charges which were affirmative in nature and submitting the issues of negligence and bad faith to the jury. Such conclusion is necessitated in view of the scintilla rule prevailing in this state, to the effect that in civil cases, issues must go to the jury if the evidence, or reasonable inferences therefrom, and viewing the evidence for the plaintiff in its most favorable light, furnishes a mere glimmer, spark, or smallest trace in support of an issue. Brandwein v. Elliston, 268 Ala. 598, 109 So.2d 687; Louis Pizitz Dry Goods Co. v. Harris, 270 Ala. 390, 118 So.2d 727; Robinson v. Morrison, 272 Ala. 552, 133 So.2d 230.

Assignments 5, 6, 7, 8, and 9, must be considered as unavailing as a basis of error.

### Assignments 14, 15, 17, and 23

■ As stated in appellee's brief in regard to these assignments:

"Appellant's assignments of error 14, 15, 17, and 23, each attacks the court's separate and several rulings to the effect that the attorney's fees incurred by the appellee in protecting his rights in the appeal of the 'Smith' case and in the litigation in the instant case, were proper elements of damage, and were recoverable by the appellee."

In his complaint in the present suit the plaintiff averred that as a proximate result of the negligence or bad faith of the defendant he was damaged as follows, to-wit: (The plaintiff here cataloged his damages among which are listed, " * * * he was caused to employ attorneys and incurred attorney's fees.")

The above averment as to attorney's fees is most general. We therefore must look to proof of the attorney's fees in determining the content of the above averment.

In the trial below the plaintiff introduced evidence to the effect that a reasonable attorney's fee from the date of the verdict and judgment through the appeal in the Carrie Smith case was $3,000. The plaintiff also introduced evidence to the effect that a reasonable attorney's fee in prosecuting the present suit was $2,500.

We will first consider the matter of the fee involved in appealing the Carrie Smith case.

Under the provisions of the policy issued by the defendant it agreed to defend any suit against the insured for bodily liability.

It appears that the defendant Hartford did furnish the plaintiff with an attorney to defend the suit. Upon being notified by Hartford that the suit was in excess of the policy limits, the plaintiff employed Mr. McLean Pitts. Thereafter Mr. Pitts and Mr. Harry Gamble, the attorney employed by Hartford to represent Mr. Cosby in the Carrie Smith case, worked together and cooperated in the investigation and defense of the suit. They were in accord as to the defense tactics except as to whether the court would submit to the jury a question of whether John J. Smedley was a "loaned servant" of Cosby, and they were further in discord as to the matter of settling the Smith case within the limits of the insurance policy.

After the verdict and judgment of the lower court, the defendant Hartford again furnished the services of Mr. Gamble to Mr. Cosby in the appeal of the Carrie Smith judgment to this court. Again Mr. Gamble and Mr. Pitts co-operated in representing Mr. Cosby in the appeal. It would appear therefore that Hartford has done everything it was bound to do under its contract

in furnishing legal representation to Mr. Cosby on the appeal of the Carrie Smith case. The evidence below was directed solely to the value of Mr. Pitts' services subsequent to the verdict in the Carrie Smith case, and not to the value of services rendered in the trial of the Carrie Smith case.

The judgment rendered in the Carrie Smith case in the Circuit Court was presumptively valid and free of error. Hartford's agreement was only for the defense of the Carrie Smith case. Insofar as the appeal was concerned it could extend only to the perfection of the appeal and its proper prosecution. It did not guarantee success in such effort. The agreement to prosecute the appeal was not equivalent to a warranty that the appeal would succeed. It furnished Mr. Cosby with an able and competent attorney. There is no intimation but that the services of the attorney furnished Mr. Cosby on the appeal of the Carrie Smith case were rendered with diligence and with competency.

 It is a fundamental rule that one seeking to hold another liable for neglect to perform some duty or obligation must show that the neglect has resulted in some loss or injury, and that as a result thereof certain damages have been suffered. Insofar as Hartford's duties in connection with the appeal of the Carrie Smith case are concerned, neither breach of duty nor damages is shown.

The fact that Mr. Pitts, the plaintiff's privately employed attorney, cooperated fully with the attorney furnished Mr. Cosby by Hartford fails to establish any breach of duty on Hartford's part, but merely tends to establish the diligence and competence with which the appeal was prosecuted, though to an unsuccessful end. It would appear therefore that the lower court erred in its rulings pertaining to the attorney's fees claimed by Mr. Cosby in reference to the appeal of the Carrie Smith case. See Getchell, etc., Co. v. Employers' Liability Assur. Corp., 117 Iowa 180, 90 N.W. 616,

62 L.R.A. 617; Wynnewood Lumber Co. v. Travelers' Ins. Co., 173 N.C. 269, 91 S.E. 946; McAleenan v. Mass. Bonding & Ins. Co., 232 N.Y. 199, 133 N.E. 444; Sterios v. Southern Surety Co., 122 Wash. 36, 209 P. 1107.

Appellant places much reliance upon Brassil v. Maryland Cas. Co., 210 N.Y. 235, 104 N.E. 622, L.R.A.1915A, 629. The facts in this case show that the insurance company, after refusing to settle a claim within the policy limits, refused to appeal the excess judgment, but offered to pay the insured the amount of the offer of settlement upon the insured's satisfaction of the entire judgment. The insured appealed and secured a reversal of the judgment. The court held that the insurer's failure to continue the defense of the case was in effect a breach of the contract of insurance. These facts are so entirely different from the present case as to make the doctrine of the Brassil case inapplicable.

Counsel for appellee also relies upon Maryland Cas. Co. v. Elmira Coal Co., 8 Cir., 69 F.2d 616. In that case the insurer had arbitrarily refused to make other than superficial investigation of the claim, and such omission gave rise to the employment of counsel by the insured. In the Carrie Smith case Hartford had made a full investigation of the facts through an adjuster and in addition Mr. Gamble had investigated the facts. This factual distinction destroys the persuasiveness of the Maryland Casualty Company case, supra, when applied to the facts of this case.

The gravamen of the instant plaintiff's action is bad faith or negligence in failing to settle the Carrie Smith claim within the policy limits, and not negligence or bad faith on the part of the defendant in the investigating and defending the Smith claim. This duty Hartford did perform, and so far as disclosed by the record, this duty was performed with diligence and competence. There is no intimation otherwise. In this aspect the plaintiff has failed to show either negligence or bad faith, or

damage. This being so, the fact that the plaintiff employed his own attorney to protect his interest and his cooperation with counsel furnished by Hartford cannot be deemed to show either negligence, bad faith, or damages in the premises.

■ As to the plaintiff's claim for counsel fees in prosecuting the present suit, it should first be noted that the general rule is there can be no recovery as damages of the expenses of litigation or attorney's fees paid by the opposing party, in the absence of a contractual or statutory duty, other than in a few recognized grounds of equity principles authorizing such liability. Clark v. Exchange Ins. Association, 276 Ala. 334, 161 So.2d 817.

Counsel for appellee however argue that the doctrine of Fidelity & Cas. Co. of New York v. J. D. Pittman Tractor Co., 244 Ala. 354, 13 So.2d 669, enunciates an exception to the above general rule, and should govern the present question. In the Pittman case, supra, it is stated:

"It appears to be well settled that where the natural and proximate consequence of a tortious act of defendant has been to involve plaintiff in litigation with a third person, reasonable compensation for attorney's fees incurred by plaintiff in such action may be recovered as damages against the author of the tortious act. All the cases support either expressly or by necessary implication this general principle."

It should be noted however that the attorney's fees allowed as damages in the Pittman case, supra, were for defense of the original suit and not attorney's fees in the second suit seeking recovery of such fees as part of plaintiff's damages.

If attorney's fees are to be allowed under the factual situation similar to the present case, other courts have held that attorney's fees must be by virtue of a statute (American Fidelity & Cas. Co. v. Greyhound Corp. 5 Cir., 258 F.2d 709), or by the provisions of the insurance contract (Zumwalt v. Utilities Ins. Co., 360 Mo. 362, 228 S.W.2d 750), or by the insurer's failure to defend the action thereby putting the insured to the necessity of the expense of hiring counsel. Christian v. Preferred Accident Ins. Co., D.C., 89 F.Supp. 888.

Hartford had no contract to furnish the plaintiff with attorneys in the present suit. We know of no statute that so provides. It follows therefore that Hartford is not liable for attorney's fees in plaintiff's prosecution of the present suit.

Appellant's assignment of error 10 relates to the action of the trial court in overruling its motion for a new trial. Under this assignment the appellant adopts its argument in support of the assignments of error to which we have already written.

It appears therefore that the trial below was free of error except in the matter pertaining to the rulings concerning the allowance of attorney's fees to the appellee. As before stated, it is our conclusion that the court erred in such rulings.

The verdict and judgment being excessive to the extent of $5,500, the amount of the attorney's fees shown in the trial below, the lower court should have directed a reduction of the verdict conditionally on the motion for a new trial.

This being the only reversible error shown, if the appellee files a remittitur of the damages to the extent of $5,500 with the clerk of this court within thirty days, this judgment will be affirmed, otherwise the judgment of the lower court is reversed and remanded.

Affirmed conditionally.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.