[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1062 
Eleganté Inns, Inc., instituted a declaratory action against Highlands Underwriters Insurance Company seeking reformation of a policy of insurance. In a separate action, Eleganté Inns sued Southern American of Alabama, Inc., and Bobby Thornell for negligently endorsing the Highlands' policy over a third party and for causing Eleganté Inns to be under-insured. The two suits were consolidated and tried without a jury. Respectively, the defendants appeal from the judgment of the circuit court reforming the policy and adjudging Southern American and Thornell guilty of negligence and awarding damages.
Eleganté Inns was the owner-operator of a restaurant known as "The Eleganté" which was located in suburban Birmingham and began operation in 1971. The corporation's business affairs were handled primarily by its President, Gus Gulas. In July, 1973, Thornell, Vice-President of Southern American, visited Gulas at "The Eleganté" restaurant to solicit the insurance account of Eleganté Inns. The meeting between Gulas and Thornell was arranged by Oscar Harper who was a stockholder and director of Eleganté Inns and a stockholder and President of Southern American.
The meeting between Gulas and Thornell was brief. Gulas turned over to Thornell Eleganté Inns' existing insurance policies. As a result of the meeting, Thornell placed a multi-peril insurance policy covering fire, liability, business interruption and workmen's compensation for Eleganté Inns with Highlands. The policy contained a 90% coinsurance clause and a provision for loss of earnings totaling $55,000.00.
In May, 1974, Eleganté Inns leased the restaurant premises to Jack Nichols under a written lease agreement which provided for a five year term during which the premises were to be used for the operation of a restaurant known as "Ceasar's IV." The lease provided that Eleganté Inns would insure the premises from loss due to fire and that Nichols would have no interest in the proceeds of the insurance. The lease contained a provision for the abatement of rent and a surrender clause in the event the building was destroyed by fire.
Gulas informed Thornell of the lease arrangement. Thereafter, Thornell met with Nichols and as a result the Highlands policy was endorsed over to Nichols; Eleganté Inns was removed as the named insured. Eleganté Inns learned of the change only after a loss to the building by fire.
It is undisputed that the change in the named insured on the Highlands policy was a mistake. In addition, it is undisputed that Thornell made a further mistake by not substituting the loss of earnings provision with a loss of rental income provision to reflect Eleganté Inns' new position as owner-lessor.[1] *Page 1063 
The building and its contents were destroyed by fire on November 24, 1974. Highlands denied coverage to Eleganté Inns.
 I.
Highlands appeals from that part of the decree and judgment reforming the insurance policy to show Eleganté Inns as the named insured and awarding damages against Highlands for $109,100.77 representing the amount due to Eleganté Inns for the coverage on the building[2] and $60,000.00 representing the full amount of policy coverage insuring the contents. The court did not reform the loss of earnings provision to provide for loss of rental income.
The policy was reformed on the basis of mutual mistake. In general, a written instrument may be reformed so as to make it conform to the intention of the parties where, through mutual mistake, their intention is not so expressed. Original Churchof God, Inc., v. Perkins, 292 Ala. 283, 293 So.2d 292 (1974). An insurance policy may be reformed as other instruments. NorthCarolina Mut. Life Ins. Co. v. Martin, 223 Ala. 104,134 So. 850 (1931).
Highlands argues that there is no mutuality of mistake unless Thornell is the agent of Highlands, and that the evidence is clear that Thornell was a broker and the agent of Eleganté Inns only.
We disagree. It is immaterial whether Thornell was the agent of Highlands because the evidence is undisputed that the intention of the parties was to insure the owner of the property.
Norris E. Krieg, Vice President of the Property Underwriting Department for Highlands, testified as follows:
"REDIRECT EXAMINATION:
 "Q. (BY MR. HARRISON:) Mr. Krieg, just a couple of quick questions.
 "Had you been in your present position when that endorsement came in changing the named insured from the Eleganté Inn to Jack Nichols d/b/a Caesar's IV, what would that have indicated to you as an underwriter?
"A. It would have indicated a new ownership.
 "Q. New ownership of this physical property, is that correct?
"A. True.
 "Q. Had Highlands been advised that this was a lease and not a transfer of ownership to Mr. Nichols, would the policy have been endorsed the way it was?
"A. No, sir.
"Q. What would Highlands have done?
 "A. I don't think the Highlands would have — well, rephrase your question, please.
 "Q. Assuming Highlands had been given information that this was a lease arrangement between the Eleganté Inns and Jack Nichols d/b/a Caesar's IV, then what would have been the appropriate action to take with regard to the policy?
 "A. Well, it certainly wouldn't have been endorsed to a new insured.
 "Q. All right, sir. There really wouldn't have had to be any change in it, would there? *Page 1064 
"A. That is correct.
 "Q. It would have been appropriate to change the loss of earnings to a loss of RIT coverage, would that not be true?
"A. If it was leased, yes, it would be."
The above clearly demonstrates that Highlands intended to insure the owner of property and thought that, in fact, it had. The judgment of the court reforming the policy was correct.
 II.
In regard to Thornell and Southern American, the court found that they owed a duty to Eleganté Inns to exercise the degree of skill and care required of a reasonable and prudent insurance agent in the community and that they had breached the duty in the following respects:
(1) They had negligently and mistakenly endorsed Eleganté Inns' insurance policy to Jack Nichols and as a consequence of which, Highlands refused to pay Eleganté Inns the proceeds of its policy. The court further found that Highlands' action in denying coverage was not arbitrary or capricious.
(2) They had failed to make any inquiry or investigation of the extent, amount and form of the insurance which should have been written for Eleganté Inns at any time throughout some eighteen months of dealings with Eleganté Inns prior to the loss. As a consequence, Eleganté Inns was grossly under-insured and in addition became subject to the provisions of the 90% co-insurance clause.
As a proximate result of their breach of duty, the following damages were awarded to Eleganté Inns:
(a) $33,000.00 representing the loss of rents.
(b) $31,188.23 representing the loss incurred by virtue of the applicability of the 90% co-insurance clause in the policy.
(c) $56,366.92 representing attorneys' fees incurred by Eleganté Inns in its successful efforts to reform the Highlands policy and collect the proceeds.
(d) $31,283.65 representing interest due on the proceeds of the Highlands' policy.
Thornell and Southern American make several contentions which we will consider in turn. First, we note that there is no dispute about the $31,283.65 interest award.
 A.
Thornell and Southern American contend the court should have reformed the Highlands policy to include and substitute a loss of rental income provision for the loss of earnings provision. We disagree.
It is axiomatic that the remedy of reformation is available to establish and perpetuate the true agreement between parties by making the instrument express the real intent of the parties. Reformation is not available to make a new agreement.Springdale Gayfer's Store Co. v. D.H. Holmes Co., 281 Ala. 267,201 So.2d 855 (1967).
Reforming the policy to replace Nichols with Eleganté Inns as the named insured does not necessarily require that the policy be reformed to reflect Eleganté Inns' position as owner-lessor. The loss of rental income and loss of earnings provisions are separate and distinct, and are designed to insure against different risks. Under the facts of this case, the loss of earnings provision insures the operator of the restaurant, which could have been either Eleganté Inns as owner-operator, or Nichols as lessee-operator. In contrast, the loss of rental income provisions can only insure Eleganté Inns, as the owner-lessor.
The unreformed loss of earnings provision in the policy is consistent with the evidence that Highlands intended to insure the property owner. The policy can be reformed to include a loss of rental income provision only if the evidence shows an intention by Highlands to insure the property owner as lessor
of the property, rather than as operator of the business. The evidence is consistent that Highlands thought it was insuring the restaurant owner-operator.
The common intentions of the parties were to insure Eleganté Inns as owner-operator *Page 1065 
and the policy was reformed to conform to such intentions. The mistake of Thornell in not insuring Eleganté Inns as owner-lessor is a unilateral one, unless the actions of Thornell are imputed to Highlands through principles of agency law. The court made no such finding and the presumption accorded the trial court on findings of fact requires that the judgment on this matter be affirmed.
As an alternative, Thornell and Southern American argue that Nichols has an insurable interest in the property and the court erred in not requiring Highlands to pay the proceeds from the loss of earnings provision to Nichols, as trustee for Eleganté Inns. This issue was not raised below nor decided by the trial court, and, therefore, will not be reviewed on appeal.McWhorter v. Clark, 342 So.2d 903 (Ala., 1977).
 B.
Thornell and Southern American contend they were not guilty of any breach of duty owed to Eleganté Inns because their agreement was only to "duplicate" the existing coverage at a cheaper rate.
The law in regard to the duty that insurance agents or brokers owe to their principals, the insureds, is stated as follows:
 ". . . when an insurance agent or broker, with a view to compensation, undertakes to procure insurance for a client, and unjustifiably or negligently fails to do so, he becomes liable for any damage resulting therefrom. (See annotation at 29 A.L.R.2d 171.)" Timmerman Ins. Agency, Inc., v. Miller, 285 Ala. 82, 85, 229 So.2d 475, 477 (1969).
Once the parties have come to an agreement on the procurement of insurance, the agent or broker must exercise reasonable skill, care, and diligence in effecting coverage. Crump v. GeerBrothers, Inc., 336 So.2d 1091 (Ala., 1976); Waldon v.Commercial Bank, 50 Ala. App. 567, 281 So.2d 279 (1973). When the agent or broker has failed in the duty he assumes, the principal may sue either for breach of the contract or, in tort, for breach of the duty imposed on the agent or broker.Waldon v. Commercial Bank, supra.
Does the evidence support the court's finding? We review the record in accordance with the rule that appellate courts will presume that the trial court made such findings as would support the decree rendered. Orton v. Gay, 285 Ala. 270,231 So.2d 305 (1970).
In regard to the agreement between Thornell and Gulas, Thornell testified that he was only to "duplicate" the coverage Eleganté Inns already had, but at a cheaper rate. Gulas' testimony confirms that the agreement was to get a better rate. However, Gulas also maintained that there was no agreement to merely "duplicate" the coverage. In Gulas' words, "I just told him [Thornell] that I wanted — what insurance I needed." A question of fact was presented as to the exact terms of the agreement and the trial court's finding is not plainly and palpably erroneous.
Thornell and Southern American also argue that Eleganté Inns was, as a matter of law, guilty of contributory negligence. At best this was a factual issue also resolved against the defendants.
 C.
Lastly, Thornell and Southern American contest the award of attorneys' fees as unauthorized by either contract, statute, or by special equity.
Eleganté Inns maintains the attorneys' fees were properly awarded as damages incurred by it in litigating against Highlands for the reformation of the insurance policy. Eleganté Inns claims Alabama recognizes the exception to the general rule that attorneys' fees can be awarded as damages when the natural and proximate consequence of the defendant's tortious act is to involve plaintiff in litigation with a third person.
In Alabama and most other jurisdictions, the general rule is that attorneys' fees or expenses of litigation are not *Page 1066 
recoverable as damages, in absence of a contractual or statutory duty, other than a few recognized grounds of equity principles. State v. Alabama Public Service Commission,293 Ala. 553, 307 So.2d 521 (1975); Hartford Accident IndemnityCo. v. Cosby, 277 Ala. 596, 173 So.2d 585 (1965); 22 Am.Jur.2d, Damages, § 165, p. 235. The `reason of the rule disallowing attorneys' fees is that they are a remote loss. 1 Sedgwick on Damages (9th ed.), § 239m o, 464.
However, it is generally recognized that where the natural and proximate consequences of the defendant's wrongful act causes the plaintiff to become involved in litigation with a third person, attorneys' fees and other expenses incurred in such litigation may be recovered as damages. 22 Am.Jur.2d, Damages, § 166, p. 235; 25 C.J.S. Damages § 50, p. 787.
In order to recover attorneys' fees against a defendant in a tort suit, the following elements are necessary:
(1) The plaintiff must have incurred attorneys' fees in the prosecution or defense of a prior action.
(2) The litigation must have been against a third party and not against the defendant in the present action.
(3) The plaintiff must have become involved in such litigation because of some tortious act of the defendant. 45 A.L.R.2d 1183.
In Fidelity Casualty Co. v. J.D. Pittman Tractor Co.,244 Ala. 354, 13 So.2d 669 (1943), Pittman sued Fidelity Casualty for falsely representing to Pittman that it had liability coverage for certain business operations and sought to recover as damages the judgment, court costs, and attorneys' fees incurred in defending a prior suit by a third party. Citing the general rule on recoverable damages, the court states that Pittman was:
 ". . . entitled to recover all the damages which were within the contemplation of the parties, or which, though not within the contemplation of the parties, were either the necessary or the natural and proximate consequences of the fraud; . . ."
 "Here, appellee is entitled to recover the amount paid in satisfaction of the Chance judgment, the court costs in connection therewith, and attorneys' fees paid for defending that suit, together with interest from the date of payment . . ." 244 Ala. at 358-359, 13 So.2d at 672.
The Pittman case was properly distinguished on the facts inHartford Accident Indemnity Co. v. Cosby, supra, but neither that case nor any other, as far as we can ascertain, have overruled its precedent. On different facts, but under the same principle the court in First National Bank of Birmingham v.First National Bank of Newport, 116 Ala. 520, 22 So. 976
(1897), allowed as damages court costs and attorneys' fees incurred in prior litigation necessitated by the defendant's breach of duty.
We are clear to the conclusion that the facts of this case are within the ambit of Pittman and attorneys' fees incurred by Eleganté Inns in reforming the insurance policy are recoverable as damages against Thornell and Southern American.
The court award of $56,366.92 for attorneys' fees is apparently based solely on Gus Gulas' testimony that he agreed with his attorneys to pay them 1/3 of any amounts recovered as attorneys' fees.
When attorneys' fees or other expenses of litigation are recoverable as damages, they can be recovered only to the extent that they are necessarily incurred and reasonable in amount. 25 C.J.S. Damages § 91 (2), p. 981. The fee charged by counsel for plaintiff is not conclusive on the court of the reasonableness of the fee to be awarded as damages. Such fees must be based, not upon the charges made in the case, but upon evidence showing the service rendered and the reasonable value thereof. United Bonding Ins. Co. v. Presidential Ins. Co.,155 So.2d 635 (Fla.App. 1963). Therefore, the award of the attorneys' fees must be reversed and the cause remanded for the circuit court to re-determine the award in accordance with applicable principles. *Page 1067 
The judgment of the court is hereby affirmed in part, reversed in part, and the cause is remanded with directions.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and BLOODWORTH, FAULKNER, ALMON and EMBRY, JJ., concur.
[1] On cross examination by counsel for Eleganté Inns, Thornell testified as follows:
"Q. Is there any distinction between coverage known as loss of earnings and loss of rents?
"A. Yes, sir, it is.
"Q. Are they two different types of coverage?
"A. Yes, sir.
"Q. Do they have different wording?
"A. Yes, sir.
"Q. Is it not true that loss of rents coverage is designed to protect a landlord or one who is renting a building to someone else?
"A. Rental coverage is to protect, yes.
"Q. That is what it's for, isn't it?
"A. Yes.
"Q. In May of 1974 when Mr. Nichols leased this premises would it not have been proper at that time to have changed Mr. Gulas' loss of earnings coverage to loss of rents coverage?
"A. Yes.
"Q. All right, sir. Isn't it correct that what should have been done is that the Elegant Inns policy should have only had one change, and that is change the loss of earnings coverage to loss of rents coverage?
"A. Yes, sir."
[2] The $109,100.77 award for the coverage on the building was determined by computation under the 90% co-insurance clause. The policy limit on the coverage of the building was $150,000.00. The actual damages to the building as a result of the fire were $140,289.00. The actual value of the building prior to the fire was $225,000.00.