**June Davis WOOD, Administratrix of the Estate of Lewis Melvin Wood, Deceased, Plaintiff,**

v.

**OLD SECURITY LIFE INSURANCE COMPANY and Bank of Red Bay, Billy Bolton, Ollis Weatherford, Dr. Z. L. Weatherford, partners d/b/a Bolton, Childers, Weatherford and Weatherford Insurance Agency, Defendants.**

No. EC 76–242–S–O.

United States District Court,
N. D. Mississippi, E. D.

Jan. 24, 1979.

Frank A. Russell, Russell & Russell, Fulton, Miss., for plaintiff.

William C. Murphree, Mitchell, McNutt, Bush, Lagrone & Sams, Tupelo, Miss., for Old Sec. Life Ins. Co.

W. P. Mitchell, Mitchell, Rogers, Eskridge, Voge & Clayton, Tupelo, Miss., for defendant and cross-defendant Billy Bolton, Bank of Red Bay, Pat Childers, Ollis Weatherford, Dr. Z. L. Weatherford.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action is pending before the court awaiting direction as to the entry of Final Judgment on the jury's verdict.

There is involved payment of the proceeds of a life insurance policy on the life of one Lewis Melvin Wood (hereafter "Wood"), who died as the result of a heart attack on June 12, 1976. The policy was issued by the Old Security Life Insurance Company, Kansas City, Missouri (hereafter "Old Security") for a 5-year term commencing January 16, 1976.

Wood and his wife, June Davis Wood (hereafter "Mrs. Wood"), on January 19, 1976, were indebted to the Bank of Red Bay, Red Bay, Alabama (hereafter "Bank") for the sum of $34,153.20. Mr. and Mrs. Wood executed a promissory note at that time payable to the Bank as evidence of the debt. The principal and interest on the note were payable over a five (5) year period. To secure the debt, Mr. and Mrs. Wood gave the Bank a deed of trust on their residence situated in Itawamba County, Mississippi.

The lending officer of the Bank who handled the loan was Billy Marl Bolton (hereafter "Bolton"). At Wood's request, Bolton procured the subject policy of life insurance as additional security for the loan. The Bank was named in the policy as Creditor Beneficiary.

At the time the loan was made and the insurance procured, Bolton was a partner in the insurance firm of Bolton, Childers, Weatherford and Weatherford Insurance Agency (hereafter "Agency"). Bolton was the executive vice-president of the Bank. The other members of the agency were Pat Childers (hereafter "Childers"), a vice-president of the bank, and Dr. Z. L. Weatherford, Chairman of the Bank's Board of Directors. Thereafter, on February 1, 1976, Ollis Weatherford, the Bank's senior vice-president became a member of the agency.

The subject policy of life insurance was issued by the agency as soliciting agent of Old Security. The initial amount of insurance was $34,153.20, the amount of the Wood's debt to the Bank. The insurance policy was designated as a "Diminishing or Joint Term" policy, that is to say the policy provided for diminishing coverage over the period of the loan.

The instructions of Old Security to the agency applicable to the issuance of the policy here involved, provided:

This policy contains three health questions that are to be answered by the insured and the policy signed by the insured. If the answer to any of these questions is yes, the policy is not to be issued.

The agent's authority under the terms of the addendum are restricted to coverages and limits herein and the attached instructions and as they may be supplemented from time to time by the Company by addendum.

The three health questions to which the above-quoted instructions refer are contained in the application for insurance which was to have been signed by Wood. The questions are:

1. To the best of your knowledge and belief, do you have any physical or mental impairments?

2. Have you ever been treated for, or been told you had, any of the following conditions? High Blood Pressure; Heart Disease; Rheumatic Fever; Cancer or Tumor; Diabetes; Tuberculosis; Arthritis; Stroke; Epilepsy; Disease of the Liver, Kidney, bladder, stomach or intestinal tract?

3. Have you consulted a doctor or been treated within the past 5 years for any condition not listed above.

(For each "Yes" answer, give details below. Give Doctor's name, address and date attended for each condition:)

The application which appears as a part of the policy appears to have been signed by Wood. A negative answer is shown to have been given to each of the questions. The agency was only authorized to issue the policy of insurance if all questions were answered in the negative.

If an affirmative answer had been given by Wood to any of the three health questions, the agency could not have issued the policy but would have been required to submit the application to Old Security for underwriting considerations.

Dr. Walter Dempsey had been Wood's family physician for many years prior to his death. Dempsey is and was at the time here involved an official of the bank.

After Wood's death, Old Security contended that Wood had consulted a doctor within the five-year period preceding the date of the application and within that time had been treated for heart disease.

The evidence shows without conflict that in January, 1975, Wood consulted Dr. Dempsey concerning chest pains and was hospitalized for a short period of time, less than 24 hours. Dr. Dempsey testified that he diagnosed the disorder as a cardiospasm and administered peritrate, a drug for heart disease. Dr. Dempsey did not, however, consider that Wood had suffered a heart attack and concluded that Wood suffered from spasms of the upper part of the stomach.[1]

The plaintiff contended on trial, that Wood did not sign the application, that the three health questions appearing thereon were never submitted to him and that he did not give negative answers thereto. The evidence on this point was conflicting and the issues were submitted to the jury through a Special Verdict with Interrogatories. The jury found that Wood did not sign the application and the subject questions were not read to him at the time of the loan transaction. Based upon these findings, the court announced its intention to enter judgment against Old Security for the amount due on the policy in favor of plaintiff and the Bank of Red Bay as their interest might appear.[2]

The verdict of the jury had the effect of determining that Bolton, acting for the Agency, breached the duty which the agency owed Old Security before issuing the policy to submit the three health questions to Wood, obtain his answers thereto and his signature to the application which contained the questions and answers.

The sole question now is whether Old Security is entitled to recover its loss on the cross claim against the Agency. The court holds that Old Security is entitled to this relief.

■ The court is governed by the law of Alabama, the state where the relationship of principal and agent between Old Security and the agency was established and where the breach occurred.

> On this finding, the court held that Old Security did not sustain the affirmative defense of false representation by Wood; that plaintiff June Davis Wood, Administratrix of Wood's estate, and the Bank of Red Bay [the "Creditor Beneficiary" in the policy, though a defendant] were entitled to recover the proceeds of the policy from Old Security.
>
> The only question now before the court is whether Old Security is entitled to recover its loss on the cross claim against the agency.

1. Dr. Dempsey testified that the ailment from which Wood suffered was not a serious ailment, and, in his opinion, would not be material to the risk insured against in the policy sued on. The parties stipulated that at the time Wood made application for the life insurance, he also made application for a policy of health and accident insurance to be issued by Lincoln American Life Insurance Company for which a physical examination was required. A physical examination of Wood was conducted by Dr. Miller Wise on March 16, 1976, and upon the examination the policy was issued. Based upon these facts, the agency argues that there is an absence in the record of any proof that Old Security has been damaged by an act chargeable to it and that there is no proof that Old Security would not have issued the policy if Wood's hospitalization had been disclosed on the application. The jury held that Wood was not asked the three health questions and did not sign the application.

2. The record reflects that at the time of his death, Wood had paid the sum of $2,978.52 on the indebtedness to the Bank, and there was an unpaid balance due thereon as of the date of his death, in the sum of $31,876.32. The policy provides that the amount of insurance payable thereunder shall not, in any event, exceed the actual unpaid indebtedness due the "Creditor Beneficiary". In this case, the recovery against Old Security should be for this amount and for the benefit of plaintiff and the Bank as their respective interests may appear.

The rule is well established in Alabama that a principal may recover such damages as he can show he has sustained by reason of the disobedience of his ·agent. *Progressive Cas. Ins. Co. v. Blythe*, 350 So.2d 1062 (Ala.Civ.App.1977); *British General Insurance Co. v. Simpson Sales Co.*, 265 Ala. 683, 93 So.2d 763, 767 (1957); *Phoenix Ins. Co. v. Seegers*, 192 Ala. 103, 68 So. 902 (1915).

In *Progressive*, the Alabama court said:

It is a settled proposition of law that an insurance agent is liable in damages for any loss sustained by the company arising from the agent's breach of duty, or by reason of any agent's failure to follow instructions, unless the company is estopped or has waived its right to take advantage of the breach of duty in the particular case.

350 So.2d at 1066. (Citations omitted).

The agency argues that, assuming arguendo, the instructions given it by Old Security were violated, the proof will not sustain a holding that Old Security was prejudiced thereby or that its loss was proximately caused by the violation. This argument is premised on the testimony of Dr. Dempsey that the ailment from which Wood suffered when he was hospitalized was not a serious ailment and, in his opinion, would not be material to the risk insured against on the policy. Dr. Dempsey also testified that he prescribed medicine for Wood on his release from the hospital only as a precautionary move and not for treatment of a heart condition. The record reflects that Wood passed the physical examination for the health and accident policy.

The instructions by Old Security to the agency were absolute. The agency was not authorized to issue the policy if Wood gave an affirmative answer to any of the three health questions. Instead the agency was required to secure details as to each affirmative answer and submit this information to the company for underwriting considerations.

The issuance of the policy in violation of instructions deprived Old Security of the right which it reserved to give the application appropriate underwriting consideration before accepting or rejecting the coverage. This was a valuable right of which Old Security was deprived by the action of the agency, and a proximate cause of its loss. The undisputed facts in the action sub judice brings it within the scope of the rule established by *Phoenix* and its progeny, *supra*.