617 F.2d 1158
 June Davis WOOD, Administratrix of the Estate of Lewis
Melvin Wood, Deceased, Plaintiff-Appellee, Cross-Appellant,
v.
OLD SECURITY LIFE INSURANCE COMPANY, Defendant-Appellee,
Bank of Red Bay, Defendant-Cross-Appellee,
Billy Marl Bolton, Pat Childers, Ollis Weatherford, and Dr.
Z. L. Weatherford, Partners, d/b/a Weatherford
Insurance Agency, Defendants-Appellants,
Cross-Appellees.
 No. 79-1870
Summary Calendar.*
 United States Court of Appeals,
Fifth Circuit.
 May 29, 1980.
 
 W. P. Mitchell, Tupelo, Miss., for defendants-appellants, cross-appellees.
 Mitchell, McNutt, Bush, Lagrone & Sams, William C. Murphree, L. F. Sams, Jr., Tupelo, Miss., for Old Security Life Ins. Co.
 Russell & Russell, Thomas E. Childs, Jr., Fulton, Miss., for June Davis Wood.
 Appeals from the United States District Court for the Northern District of Mississippi.
 Before GODBOLD, REAVLEY and ANDERSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 This appeal presents questions of Alabama law that we believe are appropriate for resolution by the Supreme Court of Alabama. We accordingly defer our decision in this matter and certify the questions to that Court.[1]
 
 
 2
 CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF ALABAMA, PURSUANT TO RULE 18, ALABAMA RULES OF APPELLATE PROCEDURE.
 
 
 3
 TO THE SUPREME COURT OF ALABAMA AND THE HONORABLE JUSTICES THEREOF:
 
 
 4
 It appears to the United States Court of Appeals for the Fifth Circuit that the above-styled case in this Court involves questions or propositions of law of the State of Alabama that are determinative of the cause, and there appear to be no clear, controlling precedents in the decisions of the Supreme Court of Alabama. The United States Court of Appeals for the Fifth Circuit therefore certifies the following questions of law of the State of Alabama to the Supreme Court of Alabama for instructions concerning such questions of law, based on the facts recited herein, pursuant to Rule 18, Alabama Rules of Appellate Procedure, as follows:
 
 
 5
 I. Style of the case.
 
 
 6
 The style of the case is June Davis Wood, Administratrix of the Estate of Lewis Melvin Wood, Deceased, Plaintiff-Appellee-Cross-Appellant, v. Old Security Life Insurance Company, Defendant-Appellee, Bank of Red Bay, Defendant-Cross-Appellee, Billy Marl Bolton, Pat Childers, Ollis Weatherford, and Dr. Z. L. Weatherford, Partners, d/b/a Weatherford Insurance Agency, Defendants-Appellants, Cross-Appellants, No. 79-1870, United States Court of Appeals for the Fifth Circuit, an appeal from the United States District Court for the Northern District of Mississippi.
 
 
 7
 II. Statement of facts.
 
 A. Procedural background.[2]
 
 8
 This diversity action, controlled by Alabama law, was brought by June Davis Wood (hereinafter referred to as Plaintiff or Mrs. Wood), administratrix of the Estate of Lewis Melvin Wood, against Old Security Life Insurance Company (hereinafter referred to as Old Security or Insurance Company) to recover the proceeds under a policy of credit life insurance. The policy named the Bank of Red Bay (hereinafter referred to as Bank) as a creditor beneficiary and the estate of the insured as beneficiary. Also named as defendants were the Bank and Billy Marl Bolton, Pat Childers, Ollis Weatherford, and Dr. Z. L. Weatherford, partners d/b/a Bolton, Childers, Weatherford & Weatherford Insurance Agency, (hereinafter referred to as Insurance Agency or Agency), based on their alleged negligence in obtaining and effecting the life insurance policy. Old Security filed a cross-claim against the Insurance Agency contending that if Old Security was found liable on the policy, its loss was caused by a breach of duty of the issuing agent, thereby making the Insurance Agency liable to Old Security for the amount of the loss.
 
 
 9
 Following a jury trial with a verdict based upon special interrogatories, the district court judge: (1) awarded judgment for the plaintiff and Bank against Old Security for $31,876.32, the amount of proceeds under the policy; (2) awarded judgment for Old Security on the cross-claim against the Insurance Agency for that same amount[3] ; and (3) dismissed the plaintiff's claims against the Bank and Insurance Agency.
 
 
 10
 From this judgment, two appeals are prosecuted, each appeal involving a certified question of Alabama law. The Agency appeals the judgment against it on Old Security's cross-claim, and plaintiff appeals the dismissal of her claims against the Bank and Insurance Agency.
 
 
 11
 B. Facts.
 
 
 12
 On January 19, 1976, Lewis Melvin Wood and his wife, June Davis Wood, were loaned $34,153.20 by the Bank of Red Bay, Alabama. The loan was evidenced by a promissory note. The principal and interest on the note were payable over a five-year period. To secure the debt, the Woods gave the Bank a deed of trust on their residence located in Itawamba County, Mississippi.
 
 
 13
 The Bank official who handled the loan was Billy Marl Bolton, executive vice president of the Bank. At Mr. Wood's request, Bolton procured the credit life insurance policy at issue as additional security for the loan.
 
 
 14
 At the time the loan was made and the insurance procured, Bolton was a partner in the Insurance Agency of Bolton, Childers, Weatherford and Weatherford. The other partners were Pat Childers, a vice-president of the Bank, and Dr. Z. L. Weatherford, chairman of the Bank's Board of Directors. Ollis Weatherford, the Bank's senior vice-president, had been training with the Insurance Agency during January, 1976, writing credit life insurance policies; on February 1, 1976, he became a partner in the Agency.
 
 
 15
 The subject life insurance policy was issued by the Insurance Agency as soliciting agent for Old Security Life Insurance Company. The initial amount of insurance was $34,153.20, the amount of the Woods' debt to the Bank. The policy, designated as a "Diminishing or Joint Term" policy, provided for diminishing coverage as payments were made on the loan.
 
 
 16
 Old Security gave instructions to the Insurance Agency related to the issuance of the policy in question.[4] The instructions provided that prior to the issuance of a policy each applicant for insurance must answer three health questions and sign the application. The instruction (with exception not applicable here) further provided that in the event that any of the questions were answered "yes," the Agency was not to issue the policy but instead was required to submit the application to the Insurance Company for underwriting consideration. The three health questions were as follows:
 
 
 17
 1. To the best of your knowledge and belief, do you have any physical or mental impairments?
 
 
 18
 2. Have you ever been treated for or been told you had, any of the following conditions? High Blood Pressure; Heart Disease; Rheumatic Fever; Cancer or Tumor; Diabetes; Tuberculosis; Arthritis; Stroke; Epilepsy; Disease of the Liver, Kidney, Bladder, Stomach or Intestinal Tract?
 
 
 19
 3. Have you consulted a doctor or been treated within the past 5 years for any condition not listed above.
 
 
 20
 (For each "yes" answer, give details below. Give Doctor's name, address and date attended for each condition).
 
 
 21
 Wood's application for insurance appears to have been signed by Melvin Wood. Negative answers are shown in response to all three health questions.
 
 
 22
 Even though a negative answer was indicated regarding each question, uncontradicted evidence showed that in January, 1975 within the five-year period preceding the date of the application Wood had consulted Dr. Dempsey, his family physician, for chest pains and was hospitalized overnight. Dr. Dempsey, who at all times here involved was the president of the bank, testified that he diagnosed the disorder as cardiospasm, a spasm of the upper part of the stomach. While Dr. Dempsey did not believe that Wood's condition was heart-related, he nevertheless prescribed peritrate, a drug for heart disease, as a precautionary measure.[5]
 
 
 23
 Mr. Wood died of a heart attack on June 12, 1976. Plaintiff contended at trial that Mr. Wood did not sign the Old Security insurance application[6] and that the three health questions were never submitted to Mr. Wood. Determining that "the evidence on this point was conflicting," the district court submitted these issues to the jury through a special verdict with interrogatories.[7]
 
 
 24
 The jury found that Wood did not sign the application and that the health questions were not read to him at the time of the loan transaction.
 
 
 25
 C. Insurance Agency's appeal from the judgment against it on Old Security's cross-claim.
 
 
 26
 Based on the jury's finding that the Insurance Agency issued the insurance policy without asking Mr. Wood the health questions, the district court concluded that the Agency issued the policy without authority and deprived Old Security of the right it reserved in the Soliciting Agent's agreement to decide whether to accept or reject Wood's application.[8] Consequently, the court held that the Agency had proximately caused Old Security's loss, and that, therefore, Old Security was entitled to recover on its cross-claim against the Agency, the amount of recovery being the amount Old Security was required to pay the Bank (the creditor beneficiary under the policy) and the plaintiff on the policy.
 
 
 27
 The Insurance Agency attacks the court's judgment, inter alia, on the ground that Old Security failed to prove that its loss was proximately caused by the Agency's failure to comply with the Company's instructions; specifically, the Agency argues that Old Security did not show that it would not have issued the policy had the instructions been complied with and Wood's January, 1975, hospitalization been disclosed on the application.
 
 
 28
 D. Plaintiff's appeal of the dismissal of her claims against the Bank and Insurance Agency.
 
 
 29
 Even though her suit against Old Security to recover the proceeds of the insurance policy was successful, plaintiff seeks to hold liable the Bank and Insurance Agency because of the damages she incurred as a result of their alleged negligence in obtaining and effecting the policy. Plaintiff claims that the jury's finding that the health questions were not asked:
 
 
 30
 amounted not only to a determination that Bolton and Weatherford, acting as insurance agents, had breached their duty to the Insurance Company as found by the judge below, but that additionally, the findings by the jury amounted to a determination that Bolton and Weatherford, acting first and foremost as Bank officials and secondarily as insurance agents, had negligently breached their duty to Wood to exercise reasonable skill, care and diligence in obtaining and effecting the policy. Plaintiff Wood's brief at 17.
 
 
 31
 As a result of this alleged negligence, plaintiff asked recovery from the Bank and Insurance Agency for the following items of damages: (1) attorney's fees, (2) expert witness fees, (3) costs of prosecution, (4) mental anguish, (5) the amount of interest accrued on her debt to the Bank since the death of her husband, less the amount of interest she is entitled to on the judgment against Old Security, and (6) punitive damages.[9]
 
 
 32
 The district court dismissed plaintiff's claim against the Bank and Insurance Agency, holding that since these defendants had procured the policy requested by the insured, they were not liable in negligence to plaintiff.[10]
 
 
 33
 III. Questions to be certified to the Alabama Supreme Court.[11]
 
 
 34
 1. Certified question arising from Insurance Agency's appeal: Assuming[12] that Old Security has shown that the Insurance Agency breached a duty owing to Old Security by failing to ask Mr. Wood, the insured, the health questions required by the Soliciting Agent's agreement, and by supplying answers to the questions without Mr. Wood's authority,
 
 
 35
 (a) Does the burden remain on Old Security, in order to recover on its cross-claim against the Agency, to also prove that its loss on the policy was proximately caused by the Agency's breach of duty? For example, must Old Security prove that it would have rejected Wood's insurance application had the Agency asked the health questions?[13] Or,
 
 
 36
 (b) Has Old Security established a prima facie case on its cross-claim against the Agency, thus shifting to the Agency the burden of proving that Old Security's loss on the policy was not proximately caused by the Agency's breach of duty? For example, must the Agency prove that, even absent its failure to ask the health questions, Old Security would have accepted Wood's insurance application?[14]
 
 
 37
 2. Certified question arising from plaintiff's appeal: Whether, under Alabama law, a cause of action in negligence lies against the party undertaking to procure insurance for another, where the party procures the insurance, but does so in a manner contravening the instructions of the insurer, resulting in damages to the insured arising from the delay and costs incurred by the insured in having to sue the insurer to collect the insurance proceeds?
 
 
 38
 The entire record in this case, together with copies of the briefs of the parties and certification in this Court, are transmitted herewith.
 
 
 39
 CERTIFIED.
 
 
 
 *
 Fed.R.App.P. 34(a); 5th Cir. R. 18
 
 
 [1]
 After determining that this cause merited certification, we prepared a draft statement of facts and questions for certification, and forwarded this draft to the parties for comment. Plaintiff June Davis Wood and Defendant Old Security Life Insurance Co. conferred, made minor changes in our draft, and jointly submitted a proposed statement of facts and a proposed certificate of questions. Under separate cover, defendants Billy Marl Bolton, Pat Childers, Ollis Weatherford, and Dr. Z. L. Weatherford, Partners, d/b/a Weatherford Insurance Agency, suggested a single modification to our draft. The statement of facts and certified questions set out below incorporates the Wood/Old Security suggestions in substantial part and the Bolton, et al. suggestion in full
 
 
 [2]
 This opinion only reports the background and facts of this case pertinent to the questions herein certified
 
 
 [3]
 The district court's decision granting judgment for Old Security on its cross-claim against the Agency is reported at 471 F.Supp. 576 (N.D.Miss. 1979)
 
 
 [4]
 These instructions, contained in the Soliciting Agent's Agreement, provide in pertinent part:
 This policy contains three health questions that are to be answered by the insured and the policy signed by the insured. If the answer to any of these questions is yes, the policy is not to be issued.
 The agent's authority under the terms of the addendum are restricted to coverages and limits herein and the attached instructions and as they may be supplemented from time to time by the Company by addendum.
 
 
 [3]
 The three health questions must be answered and the insured must sign in the place provided for his signature. If question 1 or 2 is answered 'yes', do not issue the policy, but mail it instead to Old Security's Underwriting Department for underwriting consideration. If the policy is approved, it will be returned to you and it should be issued and included in your regular monthly report. If it is not approved, it will be returned to you as a rejection and it should be treated as a 'void' policy and the proposed insured advised that no coverage has been afforded
 
 
 [4]
 If question # 3 is answered 'yes' and the reason for the 'yes' answer is any of the following you may issue the policy in your regular report. Examples: Consulted a doctor for minor ailments such as a cold, flu, skin irritation, minor cuts and bruises, a routine checkups not prompted by serious symptoms and resulting in no adverse findings. We also need the date the illness or condition was contracted and whether it has been successfully treated. If adverse medical information is disclosed, then the policy must not be issued. It must be sent to Old Security for underwriting approval as described in # 3 above
 We note that paragraph 4 quoted above from the instructions provides that if an affirmative answer is obtained to question three, see text below, the Agency may nevertheless issue the policy in its regular report if the medical consultation was for certain minor ailments. We have determined that the ailment for which Melvin Wood consulted Dr. Dempsey was not "minor" within the meaning of this paragraph; therefore, we reject the Agency's argument that it could have issued Wood's policy in its regular report.
 
 
 [5]
 At the time Wood applied for the Old Security life insurance, he also applied for a policy of health and accident insurance to be issued by Lincoln American Life Insurance Company. A physical examination was required for this policy. The examination was conducted on March 16, 1976, by Dr. Miller Wise, an associate of Dr. Dempsey. Wise found no evidence of heart disease in Wood and Wood was issued the American Life policy. Dr. Dempsey testified that, in his opinion, considering his January, 1975, diagnosis of Wood as well as Dr. Wise's March, 1976, insurance examination, Mr. Wood, in January, 1976, (when Wood applied for the Old Security policy at issue), was not suffering from any sort of physical disease or ailment that would increase the risk that an insurance company would take by insuring Wood's life. Dr. Dempsey also testified that he was not an underwriter and that he had no knowledge of Old Security's underwriting procedures. Based on this testimony, the Insurance Agency, as discussed below, argues that there is no proof that Old Security would not have issued the policy if Wood's January, 1975, hospitalization had been disclosed on the application
 
 
 [6]
 A handwriting expert compared the signature "Melvin Wood" on the application with a handwriting sample submitted by Ollis Weatherford. The expert testified that in his opinion the same person wrote both
 
 
 [7]
 The jury answered "no" to the following two interrogatories:
 "Interrogatory No. 1 : Do you find from a preponderance of the evidence that Melvin Wood, decedent, signed the application for insurance with defendant Old Security Life Insurance Company . . . ?"
 "Interrogatory No. 2 : Do you find from a preponderance of the evidence that questions 1, 2 and 3, as shown in said application, . . . were read to Melvin Wood, the decedent, at the time of the loan transaction?"
 
 
 [8]
 The district court held:
 The instructions by Old Security to the agency were absolute. The agency was not authorized to issue the policy if Wood gave an affirmative answer to any of the three health questions. Instead the agency was required to secure details as to each affirmative answer and submit this information to the company for underwriting considerations.
 The issuance of the policy in violation of instructions deprived Old Security of the right which it reserved to give the application appropriate underwriting consideration before accepting or rejecting the coverage. This was a valuable right of which Old Security was deprived by the action of the agency, and a proximate cause of its loss. 471 F.Supp. at 579.
 
 
 [9]
 Plaintiff's recovery of the first three items of damages appears precluded by Highlands Underwriters Insurance Co. v. Elegante Inns, Inc., 361 So.2d 1060 (Ala.1978). Further, plaintiff is not entitled to recover the fourth item of damages, mental anguish. The district court sustained an objection to plaintiff's offer of evidence of mental anguish damages. The court's ruling was proper since the issue of mental anguish was not raised in the pleadings or in the pre-trial order. See Hodges v. United States, 597 F.2d 1014, 1017-18 (5th Cir. 1979); 6 Wright & Miller, Federal Practice and Procedure § 1527
 
 
 [10]
 The Bank and Insurance Agency urge us to "deem" that the district court found, as a factual matter, that they were not negligent in obtaining and effecting the policy. Their argument, based upon Fed.R.Civ.P. 49(a), is that Wood failed to submit the negligence issue to the jury, thereby leaving resolution of the issue to the court. Rule 49(a). Since the court did not make a finding on the issue, they argue, quoting Rule 49(a), that the court "shall be deemed to have made a finding in accord with the judgment" dismissing Wood's claim, i. e., a finding of no negligence. We reject this argument. The district court's dismissal of Wood's negligence claim cannot be "deemed" to be based on a finding of fact, because the record affirmatively shows that the court held against Wood as a matter of law. As a matter of law, the court ruled that the Bank and Agency were discharged from responsibility because they secured the policy. The court stated:
 Any recovery by Mrs. Wood against the Bank, or against the individuals going to make up the Insurance Agency, will be denied. Because I hold that they secured a policy.
 Record, Volume III, p. 292. Depending upon the answer by the Supreme Court of Alabama to the second certified question, infra, this rule of law may be erroneous. See Highlands Underwriters Insurance Co. v. Elegante Inns, Inc., 361 So.2d 1060 (Ala.1978).
 
 
 [11]
 As we have often said:
 (T)he particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts. Martinez v. Rodriquez, 394 F.2d 156, 159 n. 6 (5th Cir. 1968).
 
 
 [12]
 For the sake of clarity, we emphasize that we are asking the Alabama Supreme Court to assume as proven the fact that the Insurance Agency did not ask Mr. Wood the health questions and the fact that the Agency supplied answers to those questions without Mr. Wood's authority. Thus, the Alabama Supreme Court is to assume that Old Security has established that the Insurance Agency breached the duty set forth in the Soliciting Agent's Agreement
 
 
 [13]
 This view is supported by Lumbermens Mutual Insurance Co. v. Bowman, 313 F.2d 381 (10th Cir. 1963); Hood v. Fireman's Fund Insurance Co., 412 F.Supp. 846 (S.D.Miss.1976); Hays v. Farm Bureau Mutual Insurance Co., 225 Kan. 205, 589 P.2d 579 (1979); Mathews v. Marquette Casualty Co., (La.App.) 152 So.2d 577, cert. denied, 244 La. 662, 153 So.2d 880 (1963); Virginia Surety Co. v. Lee, 55 Tenn.App. 501, 402 S.W.2d 714 (1964); B. Harnett, Responsibilities of Insurance Agents and Brokers, § 4.20(1) (1979)
 
 
 [14]
 This view is supported by Bank of British North America v. Cooper, 137 U.S. 473, 11 S.Ct. 160, 34 L.Ed. 759 (1890); Frangos v. United States Fidelity and Guaranty Co., 19 Ill.App.3d 947, 312 N.E.2d 688 (1974)