June Davis WOOD, Administratrix of the Estate of Lewis Melvin Wood, Deceased, Plaintiff-Appellee, Cross-Appellant,

v.

OLD SECURITY LIFE INSURANCE COMPANY, Defendant-Appellee,

Bank of Red Bay,
Defendant-Cross-Appellee,

Billy Marl Bolton, Pat Childers, Ollis Weatherford, and Dr. Z. L. Weatherford, Partners, d/b/a Weatherford Insurance Agency, Defendants-Appellants, Cross-Appellees.

No. 79–1870.

United States Court of Appeals,
Fifth Circuit.
Unit A

May 1, 1981.

W. P. Mitchell, William M. Beasley, Tupelo, Miss., for defendants-appellants, cross-appellees.

Mitchell, McNutt, Bush, Lagrone & Sams, William C. Murphree, L. F. Sams, Jr., Tupelo, Miss., for Old Security Life Insurance Co.

Russell & Russell, Frank A. Russell, Thomas E. Childs, Jr., Fulton, Miss., for June Davis Wood.

Before INGRAHAM, GEE and TATE, Circuit Judges.

GEE, Circuit Judge:

Appellee June Davis Wood (plaintiff), administratrix of the estate of Lewis Melvin Wood, deceased, filed suit in the Circuit Court of Itawamba County, Mississippi, against Old Security Life Insurance Company ("Old Security") to recover proceeds under a policy of credit life insurance. Old Security, on the basis of diversity of citizenship, removed the action to the United States District Court for the Northern District of Mississippi. After removal, plaintiff filed an amended complaint naming as additional defendants the Bank of Red Bay ("Bank") and Billy Marl Bolton, Pat Childers, Ollis Weatherford and Dr. Z. L. Weatherford, partners, d/b/a Bolton, Childers, Weatherford and Weatherford Insurance Agency ("Agency") based on their actions in obtaining and effecting the life insurance policy.

The policy named the Bank as a creditor beneficiary and the estate of the insured as beneficiary. The Bank filed a cross claim against Old Security as a creditor beneficiary under the policy, and Old Security filed a cross-claim against the Bank and the Agency. Old Security's cross-claims alleged that if Old Security should be found liable on the policy, its loss was caused by a breach of duty by the issuing agent, who was also a vice president of the Bank, thereby making the Agency and Bank liable to Old Security for the amount of the loss.

The case was tried before a jury, which returned a verdict based upon special interrogatories. The jury found that the insured, Lewis Melvin Wood, had not signed the application for insurance and that the Agency had not asked the insured a series of health questions contained in the application for insurance. Based on those findings and applying Alabama law,[1] the district judge: (1) awarded judgment for the plaintiff and the Bank against Old Security in the amount of $31,876.32, as their interests might appear; (2) awarded judgment for Old Security on its cross claim against the Agency for that same amount;[2] (3) dismissed Old Security's cross-claim against the Bank; and (4) dismissed the plaintiff's claims against the Agency and the Bank.

From this judgment two appeals are prosecuted. The Agency appeals the judgment against it on Old Security's cross claim, and plaintiff appeals the dismissal of her claims against the Agency and the Bank.

## FACTS

On January 19, 1976, Lewis Melvin Wood and his wife, June Davis Wood, borrowed $34,153.20 from the Bank. The loan was evidenced by a promissory note made payable over a five-year period. To secure the debt, the Woods gave the Bank a deed of trust on their residence located in Itawamba County, Mississippi.

The Bank official who handled the loan was Billy Marl Bolton, executive vice president. At Mr. Wood's request, Bolton procured the credit life insurance policy at issue as additional security for the loan.

At the time the loan was made and the insurance procured, Bolton was a partner in the insurance agency of Bolton, Childers, Weatherford and Weatherford. The other partners were Pat Childers, a vice president of the Bank, and Dr. Z. L. Weatherford, chairman of the Bank's board of directors. Ollis Weatherford, the Bank's senior vice president, had been training with the Agen-

---

1. The district court held that this diversity case is governed by the law of Alabama, the state where the relationship of principal and agent between Old Security and the Agency was established and where the alleged breach of that relationship occurred. The parties do not dispute this holding.

2. The district court's decision granting judgment for Old Security on its cross claim against the Agency is reported at 471 F.Supp. 576 (N.D.Miss.1979).

cy during January 1976, writing credit life insurance policies; on February 1, 1976, he became a partner in the Agency.

The subject life insurance policy was issued by the Agency as soliciting agent for Old Security. The initial amount of insurance was $34,153.20, the amount of the Woods' debt to the Bank. The policy, designated a "diminishing or joint term" policy, provided for diminishing coverage as payments were made on the loan.

Old Security gave instructions to the Agency relating to the issuance of the policy in question. The instructions provided that before issuance of a policy each applicant for insurance must answer three health questions and sign the application. The instructions (with exceptions not applicable here) further provided that in the event that any of the questions were answered "yes," the Agency was not to issue the policy but instead was required to submit the application to the insurance company for underwriting consideration. The three health questions were as follows:

1. To the best of your knowledge and belief, do you have any physical or mental impairments?

2. Have you ever been treated for or been told you had, any of the following conditions? High Blood Pressure; Heart Disease; Rheumatic Fever; Cancer or Tumor; Diabetes; Tuberculosis; Arthritis; Stroke; Epilepsy; Disease of the Liver, Kidney, Bladder, Stomach or Intestinal Tract?

3. Have you consulted a doctor or been treated within the past 5 years for any condition not listed above? (For each "yes" answer, give details below. Give Doctor's name, address and date attended for each condition).

Wood's application for insurance appears to have been signed by Melvin Wood. While negative answers were shown in response to all three health questions, uncontradicted evidence showed that in January 1975—some twelve months before the date of the application and well within the five-year period referred to in question three—Wood had consulted a Dr. Dempsey, his family physician, for chest pains and was hospitalized overnight. Dr. Dempsey, who at all times here involved was the president of the Bank, testified that he diagnosed the disorder as cardiospasm, a spasm of the upper part of the stomach. While Dr. Dempsey did not believe that Wood's condition was heart related, he nevertheless prescribed peritrate, a drug for heart disease, as a precautionary measure.[3]

Mr. Wood died of a heart attack on June 12, 1976. Plaintiff contended at trial that Mr. Wood did not sigr the Old Security insurance application and that the three health questions were never asked him. Determining that "the evidence on this point was conflicting," the district court submitted these issues to the jury on written interrogatories. As is noted above, the jury found that Wood did not sign the application and that the health questions were not read to him at the time of the loan application.

## APPEAL OF AGENCY

Based on the jury's findings that the Agency issued the policy without asking Mr. Wood the health questions, the district court concluded that the Agency issued the policy without authority and deprived Old Security of the right it reserved to give the

**3.** At the time Wood applied for the Old Security policy, he also applied for a policy of health and accident insurance to be issued by Lincoln American Life Insurance Co. A physical examination was required for this policy. The examination was conducted on March 16, 1976, by Dr. Miller Wise, an associate of Dr. Dempsey. Wise found no evidence of heart disease in Wood, and Wood was issued the American Life policy. Dr. Dempsey testified that, in his opinion, considering his January 1975 diagnosis of Wood as well as Dr. Wise's March 1976 insur-

ance examination, Mr. Wood, in January 1976 (when Wood applied for the Old Security policy at issue), was not suffering from any sort of physical disease or ailment that would increase the risk that an insurance company would take by insuring his life. Based on this testimony, the Agency, as discussed below, argues that there is no proof that Old Security would not have issued the policy if Wood's January 1975 hospitalization had been disclosed on the application.

application additional underwriting consideration in light of Wood's hospitalization. Consequently, the court held that the Agency had proximately caused Old Security's loss and hence that Old Security was entitled to recover on its cross claim against the Agency, the amount of recovery being the amount Old Security was required to pay the Bank (the creditor beneficiary in the policy) and the plaintiff on the policy. The Agency challenges this aspect of the court's judgment on two grounds.

█ First, the Agency argues that there was no evidence to support the jury's finding that the Agency did not ask the three health questions of Mr. Wood and that this issue should not have gone to the jury.[4] The Agency's argument is built on the fact that only two witnesses testified on the issue of whether the health questions were asked—Billy Marl Bolton, the Bank's executive vice president, and Ollis Weatherford, the Bank's senior vice president.[5] Both of these witnesses testified that Bolton asked Wood the health questions and that Wood answered "no" to each. Therefore, argues the Agency, there was no conflict in the evidence and no question for the jury. We reject the Agency's argument.

The test for determining whether there was sufficient evidence to submit a case to the jury was set out in *Boeing v. Shipman*, 411 F.2d 365, 374–75 (5th Cir. 1969) (en banc), as follows:

> On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes

that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

Applying the *Boeing* test, a combination of three factors leads us to conclude that a jury reasonably could find that Mr. Wood was not asked the health questions.

First, Bolton's testimony that he asked Wood the health questions and that Wood responded negatively to each was contradicted by other parts of his own testimony. After stating that he had known Wood for a number of years, had made previous loans to him, and that Wood was a long-time customer of the Bank, Bolton answered the following questions of counsel for Old Security:

Q. Have you ever known [Wood] to tell a lie?

A. No, sir.

Q. And if you had asked Melvin Wood if he had been in the hospital within the past five years [the third health

---

**4.** The Agency concedes that there was a jury question regarding whether Wood signed the insurance application but implicitly contends that it could not be held liable on Old Security's cross claim in the absence of a finding that it failed to ask Wood the three health questions. In light of our resolution of the issue of whether the health questions were asked, we need

not reach the issue of whether the Agency could be held liable if it had only forged Mr. Wood's signature on the application.

**5.** Aside from the decedent, Bolton and Weatherford were the only persons present when the application for insurance was executed.

question], what would he have told you?

A. Offhand, I think he would have told the truth.

Since Wood had been hospitalized within the five years preceding his insurance application, the truthful answer would have been "yes."[6]

Second, Weatherford's testimony concerning the events surrounding Wood's application for insurance was contradicted in part by plaintiff's testimony and by Earl Davenport, a handwriting expert called by plaintiff. Weatherford testified that Wood signed the insurance application. However, plaintiff examined the application and testified that the signature "Melvin Wood" was not that of her husband. Similarly, the expert testified that the signature was not written by Melvin Wood; rather, it was written by the same person who filled in the top of the application, Ollis Weatherford. This contradiction placed a cloud over all of Weatherford's testimony concerning the application, including his testimony as to the asking of the health questions.

Third, Bolton's and Weatherford's interest in the outcome of this case is substantial. They are both parties to this lawsuit and partners in the defendant Agency. As such, they face a potential liability of some $32,000. This fact, together with the other factors just mentioned, creates a jury question as to their credibility. *See Brown v. Ford Motor Co.*, 479 F.2d 521 (5th Cir. 1973);[7] *Taylor v. Bair*, 414 F.2d 815, 818 (5th Cir. 1969).

Accordingly, we hold that there was sufficient evidence to support the jury's finding that the Agency, in violation of Old Security's instructions, failed to ask Mr. Wood the three health questions.

The Agency's second attack on the Old Security judgment is more telling. The argument is that the trial court erred in holding the Agency liable simply because of its failure to ask Wood the three health questions. According to the Agency, the evidence indicated that Old Security would

---

**6.** Of course, if Wood actually told Bolton that he had not been hospitalized within the past five years, it is conceivable that this answer could be due to memory lapse rather than to dishonesty. However, we believe that the possibility that Wood would have forgotten his overnight hospitalization for chest pains just one year before he applied for the insurance at issue here does not remove the contradiction in Bolton's testimony.

**7.** In *Brown*, a case based on the allegedly negligent manufacture of an automobile, a witness for defendant Ford, Jurvis, testified that the defective wheel that caused the injury was not delivered to Ford until ten months after the car in question was manufactured. Plaintiff argued that the jury was not required to accept Jurvis' testimony because of his bias and interest in the outcome of the case. This claim of bias was based solely upon the fact that Jurvis' employer, the manufacturer of the wheel, had been doing a substantial amount of business with Ford. Responding to plaintiff's argument, we held:

> Some decisions contain language to the effect that the testimony of an interested witness always creates a jury question as to credibility. We decline to adopt any such absolute rule. Each case must turn upon its individual facts. Where the interest of the testifying witness in a particular outcome of the pending litigation is substantial, his possible bias

may be sufficient in itself to create a jury question as to credibility. On the other hand, where the interest of the witness is altogether remote or indirect a jury should not be permitted to speculate as to veracity. Between these two extremes various gradations of bias are possible. In these neither-fish-nor-fowl cases the decision to submit the question to the jury must depend not only upon interest but also on various additional factors, including the inherent plausibility of the testimony and its contradiction or corroboration by the other evidence.

*Id.* at 523. Because Jurvis' interest in the outcome of the case was indirect and because the objective nature of Jurvis' testimony concerning the date of the manufacture and delivery of the wheel, if untrue, was readily susceptible to impeachment, we concluded that no jury question existed as to Jurvis' credibility. *Id.* In contrast, Bolton and Weatherford, as partners in the Agency, have a very direct interest in the outcome of this case; their testimony as to the asking of the health questions is not readily susceptible to impeachment; they are the only living witnesses to the transaction in which Wood applied for the insurance, and their testimony cannot be tested by documentary evidence. Finally, unlike Jurvis', their testimony was at least partially contradicted and impeached.

have issued the policy even if Wood had been asked the questions and had answered them truthfully. Thus, the Agency contends that its failure to follow Old Security's instructions did not proximately cause Old Security's loss and that the trial court's failure to consider the causation issue is reversible error. While we are in basic agreement with this contention, for the reasons discussed below we remand the case to the trial court for a finding on the causation issue rather than simply rendering judgment for the Agency.

■ After the jury had returned its verdict, the trial judge directed Old Security and the Agency to submit briefs on the question of the Agency's liability to Old Security on its cross claim. As the district court's subsequent Memorandum of Decision makes apparent, the Agency argued in its brief that it could not be held liable in the absence of a finding that Old Security would not have issued the policy if the questions had been asked and truthfully answered and that the evidence would not support such a finding. This argument was rejected on the ground that the Agency's failure to follow Old Security's absolute instructions deprived Old Security of its valuable right to subject the application to additional underwriting consideration in light of the additional information Wood would have supplied had he been asked the questions. While we agree that the Agency's breach deprived Old Security of a valuable right, the Agency cannot be held liable for the proceeds of the policy unless its breach did in fact cause the loss. If Old Security would have issued the policy even if the questions had been asked and answered truthfully and the application had been submitted to it with the additional information concerning Wood's hospitalization, then the Agency's conduct, concededly wrongful, did not cause a loss and therefore cannot be the basis for a recovery by Old Security on its cross claim.

Old Security argues that an insurance agent who issues a policy in spite of explicit instructions from the company to the contrary is liable to the company for the proceeds the insured recovers from the company. As authority for this proposition, Old Security cites *Progressive Casualty Insurance Co. v. Blythe*, 350 So.2d 1062 (Ala.Civ. App.1977), a case in which the agent financed the insured's purchase of a motorcycle, procured a casualty insurance policy for the insured without discussing the policy with him, and wrongfully signed the insured's name to the part of the application rejecting uninsured motorist coverage. A relative of the insured, covered by the policy, was then involved in an accident with an uninsured motorist; because under Alabama law a rejection of uninsured motorist coverage was effective only if signed by the insured, the company settled the claim with the insured and sued the agent for indemnity. The court held the agent liable on the grounds that he misrepresented a material fact and that the company sustained a loss in justifiably relying on the misrepresentation.

The causation issue was not addressed directly in *Blythe*. The agent apparently did not make the argument that had he discussed the policy with the insured, he (the insured) would have taken the uninsured motorist coverage so that the company would have been liable under that provision of the policy even if the agent had acted properly. While the causation issue apparently was not raised in *Blythe* and thus was not addressed directly, the court's discussion of the legal theory under which the company could prevail against the agent convinces us that if it were shown that the agent's wrongful conduct did not cause the company a loss, it would not have been liable.

According to the *Blythe* court:

It is a settled proposition of law that an insurance agent is liable in damages for any loss sustained by the company *arising from* the agent's breach of duty, or by reason of any agent's failure to follow instructions, unless the company is estopped or has waived its right to take advantage of the breach of duty in the particular case. See 44 C.J.S. Insurance § 159 (1945); *Manufacturer's Casualty*

*Insurance Co. v. Martin-Lebreton Insurance Agency,* [242 F.2d 951 (5th Cir. 1957)]; *Phoenix Insurance Co. v. Seegers,* [192 Ala. 103, 68 So. 902 (1915)].

350 So.2d at 1066 (emphasis supplied). While the "arising from" language arguably is ambiguous with respect to the question of whether lack of causation precludes recovery, the citations to *Manufacturer's Casualty* and to *Seegers* aid us in resolving the ambiguity; both of those cases indicate that an insurance company cannot recover from a breaching agent for a loss not caused by the agent's breach. In *Manufacturer's Casualty* we found the law to be "well settled" that if an agent exceeds his authority and if "his actions cause loss to the principal, the agent is fully accountable to the principal therefor." 242 F.2d at 953. In *Seegers* the Alabama Supreme Court cited favorably its earlier opinion in *Adams v. Robinson,* 65 Ala. 586 (1880), for the rule that "[w]here . . . an agent violates his positive instructions given him by a principal, this would constitute gross negligence, which would render him liable for such loss or damage as may be occasioned by his misconduct." 68 So. at 904. We conclude that if the Agency's failure to ask Wood the three health questions did not cause Old Security's loss—because the company would have issued the policy anyway—the Agency cannot be held liable to Old Security for the proceeds of the policy.

The next question is whether a finding on the causation issue was made. Under Rule 49(a), Fed.R.Civ.P., the trial judge elected to submit the case to the jury on written interrogatories. The jury was not asked whether Old Security would have issued the policy even had the Agency asked the questions, received truthful answers, and submitted the application to the company with the additional information regarding Wood's prior hospitalization for chest pains. Rule 49(a) provides in pertinent part:

If . . . the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accordance with the judgment on the special verdict.

Arguably, the trial judge should be deemed to have decided the causation issue in favor of Old Security as, under the rule, such a finding would be "in accordance with the judgment on the special verdict." Had the trial judge simply granted judgment to Old Security on its cross claim without explanation, we would affirm on the basis of such a deemed finding under Rule 49(a). In his Memorandum of Decision, however, the district judge affirmatively indicated that he made no finding on the causation issue because of his belief that, once a breach of duty by the Agency was established, it was liable as a matter of law. We decline to deem the trial judge to have made a finding in accordance with the judgment where the record affirmatively shows that he made no such finding because of a mistaken belief that, as a matter of law, the causation issue was irrelevant.[8]

We conclude that the Agency cannot be held liable on Old Security's cross claim in the absence of a finding of causation and that such a finding was not made at the trial below and cannot be deemed to have been made. Under Rule 49(a), by failing to demand submission of the causation issue to the jury, the parties have waived their right to have the jury decide the causation question; accordingly, we remand the case for a finding by the trial court on the question of

---

8. In our prior certification opinion in this case, *Wood v. Old Security Life Ins. Co.,* 617 F.2d 1158 (5th Cir. 1980), we reached a similar conclusion with respect to the application of Rule 49(a) in a different context. As discussed later in the text, plaintiff's suit against the Agency and the Bank for negligently procuring the policy was dismissed because the requested cover-age was in fact obtained. Because the trial judge affirmatively indicated that it dismissed the claim as a matter of law without regard to the alleged negligence of the Agency and the Bank, we refused to deem that he found that the Agency and the Bank were not negligent under Rule 49(a). *Id.* at 1163 n.10.

whether Old Security would have issued the policy even if the Agency had followed its instructions to the letter.[9]

On remand the question may arise as to whether Old Security or the Agency bears the burden of proof on the causation issue. This question was certified to the Alabama Supreme Court, 617 F.2d 1158 (5th Cir. 1980), but that court declined to answer it. Accordingly, we must attempt to decide the question as we believe the Alabama Supreme Court would if the question were raised in a state court proceeding. As noted in the certification opinion, the cases from other jurisdictions are divided on this point. *Id.* at 1164 nn. 13 & 14. The majority view is that the burden of proving that the agent's breach caused the company a loss is on the company. As that view comports with the general rule that causation is an element of the plaintiff's case, we decide that on remand the burden of proving causation will be on Old Security.[10]

## APPEAL OF PLAINTIFF

As stated, plaintiff's amended complaint named the Agency and the Bank as additional defendants. While plaintiff was suc-

---

9. The Agency argues that there was no evidence presented at trial to support a finding that but for the Agency's breach Old Security would not have issued the policy. We disagree. It is undisputed that Wood was hospitalized approximately 12 months prior to applying for the policy herein involved. The hospitalization resulted in an overnight stay and was necessitated by Wood's complaints of chest pains. Further, the attending physician, Dr. Dempsey, prescribed peritrate, a drug for heart disease; Wood died of a heart attack some five months after securing the insurance coverage at issue in this case. While Dr. Dempsey testified that he diagnosed Wood as suffering from cardiospasm, an upper stomach disorder; that he prescribed the heart medicine peritrate only as a precautionary measure; and that in his (Dr. Dempsey's) opinion, at the time Wood applied for the policy he was not suffering from any physical disorder that would increase the risk that an insurance company would take by insuring Wood's life, his testimony could be discounted by the trier of fact on the basis of his position as president of the Bank. It is clear that the Agency's claim that a verdict must be directed in its favor on the causation issue must be rejected.

10. As discussed above, the agent in *Progressive Cas. Ins. Co. v. Blythe,* 350 So.2d 1062 (Ala.Civ.App.1977), wrongfully signed the insured's name to a section of the application rejecting uninsured motorist coverage. Because the insured did not sign the rejection, the company paid the claim arising from a subsequent accident with an uninsured motorist and sued the agent for indemnity. The Alabama court held for the company on the ground that the agent had fraudulently misrepresented a material fact upon which the company had justifiably relied. While the opinion characterizes the issue as being "whether a soliciting insurance agent is liable to his principal insurance company for damages *caused* by his misrepresentation upon which the principal relied," *id.* at 1065 (emphasis supplied), there is no discussion of whether the company's loss was caused by its justifiable reliance on the misrepresentation. The causation question in *Blythe* is whether the company would have been liable to the insured even if the agent had not made the misrepresentation. If the agent had discussed the uninsured motorist coverage with the insured and the insured had signed the rejection of that coverage, the company would not have been liable; if, however, the insured had decided to take the uninsured motorist coverage, the company would have been liable under the policy.

Arguably, the court's holding for the company indicates that it placed the burden of proof on this causation question on the agent. We reject this view for two reasons. First, there are no statements to that effect in the opinion; rather, the opinion indicates that the court assumed that the agent's misrepresentation caused the company's loss. Apparently this assumption was based on the fact that if the insured, and not the agent, had signed the rejection the company would not have been liable. Second, the court's holding is equally consistent with a burden of proof theory that we find more reasonable for these kinds of cases. Under this theory, when the company proves the agent's breach and the company's liability on the related policy, a rebuttable presumption arises that the agent's breach caused the company's loss. Thus if, as in *Blythe,* no evidence on the causation question is offered, the company recovers. If, however, the agent comes forth with substantial evidence under the test enunciated in *Boeing v. Shipman,* 411 F.2d 364, 374–75 (5th Cir. 1969) (en banc), the presumption vanishes, and the burden of going forward with evidence sufficient to overcome the agent's showing is on the company. As the Agency offered substantial evidence that the policy would have been issued even if the Agency had followed Old Security's instructions, *see* nn. 3 & 9, *supra,* the burden of proving causation would have rested on Old Security.

cessful in recovering the face value of the policy from Old Security, she seeks to hold the Agency and the Bank liable for the damages she suffered caused by the alleged negligence of the Agency and the Bank in procuring the coverage. Plaintiff's theory is simple: had the Agency and the Bank procured the policy with due care, plaintiff would not have had to sue Old Security to collect the proceeds under the policy. The specific items of damages sought by plaintiff are: (1) attorneys' fees, (2) expert witness fees, (3) costs of prosecution, (4) mental anguish, (5) the amount of interest accrued on her debt to the Bank since the death of Wood, less the amount of interest she is entitled to on the judgment against Old Security, and (6) punitive damages.

After holding Old Security liable for the full amount of the proceeds due under the policy, the district court dismissed plaintiff's claims against the Agency and the Bank on the grounds that they secured the coverage for which the insured had applied and that plaintiff's suit for the policy's proceeds had been successful. We certified the question of whether a cause of action in negligence arises from these facts to the Alabama Supreme Court, Ala.Sup.Ct. 617 F.2d 1158 (5th Cir. 1980). As that court also declined to answer this certified question, we proceed to decide it as best we can, attempting to anticipate the state court.

In *Highlands Underwriters Insurance Co. v. Elegante Inns, Inc.*, 361 So.2d 1060 (Ala.1978), the owner of a restaurant leased the premises to a third party and notified its insurance agent of the lease. The agent then erroneously removed the owner's name from the existing multi-peril insurance policy and endorsed it over to the lessee. When the property was destroyed by fire the owner was forced to sue the insurance company to collect under the policy; suit was also filed against the agent seeking damages caused by his negligent endorsement of the policy to the lessee and by his causing the owner to be underinsured. At trial the agent was held liable to plaintiff for, among other things, some $56,-000 in attorneys' fees incurred by the prop-

erty owner in successfully suing the insurance company for the proceeds of the policy. The agent's liability for the owner's attorneys' fees was affirmed on appeal; the case was remanded solely for a determination of the reasonable value of the services rendered, the Alabama court holding that when attorneys' fees are recoverable as damages, the amount must be based not upon the amount of fees actually paid but upon the reasonable value of the legal services necessarily incurred.

In our view, *Elegante Inns* dictates that the dismissal of plaintiff's suit against the Agency and the Bank be reversed. In *Elegante Inns*, just as in this case, the insured successfully collected the proceeds of the policy despite the breach of duty committed by the agent. The fact that the insured collected the proceeds did not dissuade the Alabama Supreme Court from holding that the insured had an actionable claim against the agent; therefore, neither does it preclude us from reaching a similar result. True, the cases are distinguishable in that in *Elegante Inns* the agent caused the owner to be underinsured, while in the instant case the agent procured all of the requested coverage. This distinction, however, does not support a different result, as the property owner in *Elegante Inns* was allowed to recover from the agent the attorneys' fees it incurred in suing the insurer. We find nothing in the court's opinion in *Elegante Inns* indicating that the property owner's claim against the agent for attorneys' fees could not have been brought successfully ·had the owner not had an additional claim against the agent for causing it to be underinsured. Rather, the court's statement of the theory under which the owner could recover from the agent indicates the contrary:

> Once the parties have come to an agreement on the procurement of insurance, the agent ... must exercise reasonable skill, care, and diligence in effecting coverage. [citations omitted]. When the agent or broker has failed in the duty he assumes, the principal may sue either for breach of the contract, or, in tort, for

breach of the duty imposed on the agent or broker.

*Id.* at 1065. In short, in both *Elegante Inns* and the instant case the insured was required to sue the insurer to collect the proceeds of the policy solely because of the agent's (at best) careless conduct with respect to the insured's rights under the policy; since these facts gave rise to an actionable claim under Alabama law in *Elegante Inns*, they must do so in our case as well.

We conclude that the decision dismissing plaintiff's claim against the Agency and the Bank must be reversed and the cause remanded for trial. We offer the following guidance to the district court with respect to two questions likely to arise during the course of the new trial. First, as we have determined is the case with respect to Old Security's cross claim against the Agency, plaintiff may not recover from the Agency and the Bank unless their conduct caused her a loss. While it is clear that but for the conduct of the Agency and the Bank plaintiff would not have had to sue Old Security, it is not clear that their conduct caused plaintiff a net loss. Arguably, if the Agency and the Bank had exercised due care in confecting Wood's application, the coverage would never have been procured because Old Security might have rejected his application had it known of his recent hospitalization for chest pains. In that event, plaintiff would have been unable to recover any life insurance proceeds on the death of Wood.

Thus, the question of whether the Agency and the Bank caused plaintiff to suffer a loss is the same as the causation question presented by Old Security's cross claim against the agent, which we have remanded to the trial judge for a factual finding: whether, had the Agency performed its task in compliance with its principal's instructions, asked the health questions, and received truthful answers the policy would have issued anyway. On remand, plaintiff

will be able to recover from the Agency and the Bank only if she carries her burden of proving that their conduct in fact caused her a loss, *i. e.*, that the policy would have issued even if the Agency and the Bank had followed Old Security's instructions.[11]

In our attempt to certify, we stated that plaintiff's recovery of attorneys' fees, expert witness fees and costs of prosecution "appears precluded" by the Alabama Supreme Court's opinion in *Elegante Inns*, discussed above. Further, we stated that her claim for mental anguish damages properly was rejected by the trial court because it was not raised in either the pleadings or the pretrial order. 617 F.2d at 1163 n.9. With respect to the mental anguish claim, plaintiff may assert it on remand by amending her complaint.

Similarly, we find that plaintiff's recovery of attorneys' fees, expert witness fees, and costs of prosecution is not precluded by *Elegante Inns*. In that case the Alabama Supreme Court held that attorneys' fees are recoverable as damages from a defendant whose wrongful conduct has caused the plaintiff to become involved in litigation with a third person. The opinion in *Elegante Inns* appears to limit the recovery of attorneys' fees to situations in which they were incurred in a "prior action" with a third person. However, this limitation was not, in fact, followed in *Elegante Inns*, and we decline to follow it in this case.

In *Elegante Inns* plaintiff sued the insurer for reformation of the policy and brought a separate action against the agent based on, among other things, the agent's negligent endorsement of the policy to plaintiff's lessee. Significantly, these two cases were consolidated for trial so that plaintiff's claim against the agent for attorneys' fees was not for fees incurred in a prior action. Nevertheless, the court held that plaintiff was entitled to attorneys' fees incurred by it in obtaining reformation of

---

**11.** The Bank apparently has neither moved to be dismissed nor moved for summary judgment on the theory that Bolton's wrongful conduct was committed by him solely in his capacity as a partner in the Agency and not as an officer of

the Bank. While we express no opinion on the question of whether, under Alabama law, the Bank is a proper party to this lawsuit, the issue may be addressed on remand.

the insurance policy. Similarly, plaintiff's claim for attorneys' fees in this case is not precluded by the fact that they were not incurred in a prior action. As was the case in *Elegante Inns*, however, if plaintiff proves that the wrongful conduct of the Agency and the Bank caused her a loss, her attorneys' fees recovery is limited to the reasonable value of the services performed by her attorneys in suing Old Security. Plaintiff is not entitled to recover attorneys' fees incurred by her in suing the Agency and the Bank.

Accordingly, we vacate the judgment in favor of Old Security on its cross claim against the Agency and the judgment dismissing plaintiff's claims against the Agency and the Bank and remand the case to the trial court for further proceedings consistent with this opinion.

VACATED and REMANDED.